No. 19,385.

UNITED STATES FIDELITY AND GUARANTY COMPANY *v.* DISTRICT COURT OF THE CITY AND COUNTY OF DENVER, ET AL.

(353 P. [2d] 1093)

Decided July 11, 1960.

Mr. DUANE O. LITTELL, Mr. JAMES E. ALGEO, for petitioners.

Messrs. SMITH, PYLE, JOHNSON & MAKRIS, for respondents.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

THIS is an original proceeding in this court in which plaintiff seeks a writ in the nature of prohibition to bar further action on the part of the trial court. Plaintiff was summoned as garnishee in proceedings under a judgment rendered against John J. Shea, operator of an automobile, for damages in an action brought by the Markowskis as a result of an automobile accident in which the Markowskis were injured. In the original action service was made on Shea pursuant to C.R.S. '53, 13-8-2, by delivering a copy of the summons to the Secretary of State of Colorado. No appearance was entered therein by Shea and in due course judgment was entered against him for $15,000. Plaintiff filed an answer to the garnishee summons, which, however, does not appear in the record before us. It also moved to dismiss the proceedings below under Rule 103, R.C.P. Colo., for lack of jurisdiction, alleging that Shea was a resident of Colorado at the time of the accident upon which the Markowski action was based, hence the statute has no application. In support of this motion plaintiff filed Shea's affidavit, which states:

"3. That at the time the aforesaid accident occurred on April 18, 1954, John J. Shea was a soldier in the United States Air Force, residing in the State of Colorado at the Lowry Air Force Base in Denver, Colorado, and had so resided at the Lowry Air Force Base for a minimum period of time of two months prior to said accident of April 18, 1954."

Later Shea's deposition was taken in which it appears that he had been on Lowry Air Force Base for about

ten months; that he was a single man and lived at all times on the base; that he took his meals there and had returned to his home in Connecticut immediately after his discharge from military service. The accident occurred in April 1954, and shortly thereafter Shea was transferred to Walker Air Force Base in Roswell, N.M., where he remained until September 1955, when his military service was terminated. Shea's deposition shows that he owned no property in Colorado; engaged in no employment other than his military service; had no Colorado automobile driver's license, and that upon leaving Lowry Air Force Base he did not return to Colorado.

Plaintiff's motion to dismiss the proceeding for lack of jurisdiction was overruled, and it institutes this proceeding under Rule 106, R.C.P. Colo., alleging that the trial court is proceeding without jurisdiction.

The sole question presented is — was there sufficient evidence before the trial court to support its finding that John J. Shea was a non-resident of Colorado at the time of the accident?

C.R.S. '53, 13-8-1, defines a non-resident "to be any natural person * * * not residing within the state." Subsequent sections of the same Chapter provide for substituted service on a non-resident who is involved in an automobile accident within this state.

A leading case is *United Service Automobile Association v. Harman,* Tex. App., 151 S.W. (2d) 609, where it is stated:

" * * * A person's residence is ordinarily determined by his intention, coupled with overt acts evidencing such intention. Lawther was an unmarried man. He went to Maryland not upon his own volition, but strictly in obedience to military orders. When he arrived at Fort Hoyle, he did not evidence by any acts an intention to there establish a residence of any kind. He bought no property, neither did he rent any. His place of abode was in the barracks on the military reservation furnished him by the Government. If he had received or-

ders the next day, or the next month, transferring him to another Fort, he no doubt stood ready to obey such order. The military reservation upon which Lowther had his place of abode was not territory belonging to the State of Maryland, but was territory which had been ceded to the United States Government. It is generally said that a single man's residence is where he usually sleeps at night. Under the facts in this case, Lawther did not usually sleep at night in any territory belonging to the State of Maryland, but upon a military reservation under the jurisdiction of the Federal Government. It is true that when the State of Maryland ceded to the Federal Government the ground upon which Fort Hoyle was established, it reserved the right to go upon the reservation for the purpose of serving process, but this reservation of authority in no way prevents the Federal Government from having full and complete jurisdiction over this military reservation."

See, also, *Teague v. District Court,* 4 Utah (2d) 147, 289 P. (2d) 331.

■ By C.R.S. '53, 142-1-35, the General Assembly ceded jurisdiction over Lowry Air Force Base to the United States. To paraphrase the United Services case, Shea did not usually sleep at night in any territory belonging to the State of Colorado, but upon a military reservation under the jurisdiction of the Federal Government.

The typical case which the statute is apparently designed to meet is where the defendant is only transiently operating a motor vehicle on the Colorado highways, although by its terms it is not limited to one making a continuous journey through the State, but covers any case where a non-resident, operating a motor vehicle in this State, causes damage.

Upon the evidence submitted to the trial court it found that Shea was a non-resident of Colorado at the time of the accident, and there is ample competent evi-

dence to sustain this finding. We cannot interfere with a finding so supported.

The rule is discharged.

MR. JUSTICE DAY not participating.