The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Jill COIT, Defendant–Appellant.

No. 95CA1145.

Colorado Court of Appeals,
Div. II.

Nov. 28, 1997.

Rehearing Denied Jan. 8, 1998.

Certiorari Denied Aug. 24, 1998.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John J. Krause, Assistant Attorney General, Denver, for Plaintiff–Appellee.

Joseph Saint–Veltri, Denver, Steven Janiszewski, Arvada, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Jill Coit, appeals the judgment of conviction entered upon jury verdicts finding her guilty of first degree murder and conspiracy to commit first degree murder. We affirm.

Defendant was embroiled in a bitter civil suit against her ex-husband, who was the victim in this case. The lawsuit arose over the victim's claimed interest in a bed and breakfast in Steamboat Springs, Colorado, which defendant owned with a son by a previous marriage. Defendant apparently had given the victim a fraudulent deed of trust encumbering the property in order to avoid execution of a judgment obtained in a divorce proceeding by one of her former husbands.

After defendant filed the civil action against the victim seeking a release of the deed of trust, the victim counterclaimed for intentional infliction of emotional distress and outrageous conduct. The counterclaim alleged, among other things, that defendant had falsely asserted she had given birth to a child fathered by the victim.

The victim's murder occurred in Steamboat Springs one week before the civil trial was to begin. Approximately one month later, defendant was arrested and charged with first degree murder and conspiracy to commit murder along with a co-defendant with whom she had a personal relationship. The two cases were joined and, following the filing of both defendants' motions for change of venue, the place of trial was changed from Routt County to Grand County. A six-week trial resulted in the convictions here at issue.

I.

■ Defendant first contends the trial court erred in only partially granting her motion for a change of venue and in moving the trial to Grand County rather than to a different judicial district. We are not persuaded.

■ A motion for a change of venue is committed to the sound discretion of the trial court, and absent a clear abuse of that discretion, its decision will not be disturbed. See People v. Simmons, 183 Colo. 253, 516 P.2d 117 (1973); People v. Moore, 902 P.2d 366 (Colo.App.1994), aff'd, 925 P.2d 264 (Colo.1996); § 16–6–102(2), C.R.S.1997.

In support of her initial motion, defendant presented an expert witness who testified

about a public opinion survey taken in the Fourteenth Judicial District. According to the expert, unfavorable responses in excess of 40% signified that a fair and impartial jury could not be seated within the judicial district. Over 40% of the respondents had indicated their belief that defendant was either guilty or probably guilty of murder.

The survey did not distinguish among the individual counties comprising the judicial district but was weighted by population. It thus sampled more respondents from Routt County, the most populous county in the district and the county in which the murder had occurred. Based on this evidence, the trial court granted the defendant's motion in part by transferring the trial from Routt County to Grand County.

Defendant then filed a motion for re-hearing, attaching an affidavit from her expert which contained survey results specific to Grand County. However, the responses unfavorable to defendant in this survey were less than 40%, and we perceive no abuse of discretion in the trial court's determination that defendant could receive a fair trial in Grand County.

## II.

Defendant next contends the trial court erred in denying her motion to suppress evidence seized at Lowry Air Force Base (Lowry). We disagree.

## A.

■ Because one of defendant's ex-husbands had been in the military, she was allowed to use civilian living quarters located at Lowry. A state court judge had issued a search warrant for these premises and for a vehicle also located on-base. Defendant asserts that execution of the state court's warrant was invalid because, at that time, Lowry was a military reservation under the exclusive jurisdiction of the United States. *See United States Fidelity & Guaranty Co. v. District Court,* 143 Colo. 434, 353 P.2d 1093 (1960). We are not persuaded.

The record surrounding the warrant was not extensive. However, it appears that the state warrant was presented to Lowry's base commander who then issued a military authorization to search the same premises. Seemingly, both military and civilian law enforcement personnel conducted the search and seized certain items admitted in the criminal trial.

As defendant alleged in the trial court:

(1) [O]n or about December 2, 1993, personnel of the United States Air Force searched the [defendant's] room and vehicle at Lowry Air Force Base pursuant to an Authority to Search and Seize; and

(2) [T]he Authority to Search and Seize was signed by [the base commander].

Defendant did not allege that probable cause was lacking either for the state warrant or for the base commander's authorization.

■ A military base commander is competent to issue authorizations to search and seize for persons and property situated in places under the commander's control. *United States v. Banks,* 539 F.2d 14 (9th Cir.), *cert. denied,* 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976); *Wallis v. O'Kier,* 491 F.2d 1323 (10th Cir.), *cert. denied,* 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974) (military base commander is neutral and detached magistrate for determining probable cause and may issue search warrant for persons or property, including civilian property, situated in place under commander's control).

In *State v. Long,* 37 N.C.App. 662, 246 S.E.2d 846, *appeal dismissed, review denied,* 295 N.C. 736, 248 S.E.2d 866 (1978), a search and seizure was upheld under analogous circumstances. There, as here, a base commander issued an "Authority to Search and Seize" directing military officers to search an on-base home occupied by both military and civilian personnel. And there, as here, following execution of a search by military and civilian law enforcement officers, the evidence seized was admitted in defendant's civilian criminal prosecution. *See also Eggleston v. Department of Revenue,* 895 P.2d 1169 (Colo.App.1995) (upholding sobriety test administered by military officer to civilian while driving on Air Force Academy grounds).

Similarly, we reject defendant's contention that the evidence seized at Lowry should have been suppressed.

### B.

■ We also reject defendant's contention that the evidence seized at Lowry should have been suppressed because the search and seizure violated the Posse Comitatus Act, 18 U.S.C. § 1385 (1994) (PCA).

The PCA was passed shortly after the end of the Reconstruction Era and was designed to "put an end to the use of federal troops to police state elections in the ex-Confederate states where the civil power had been reestablished." *Chandler v. United States,* 171 F.2d 921, 936 (1st Cir.1948), *cert. denied* 336 U.S. 918, 69 S.Ct. 640, 93 L.Ed. 1081, *rehearing denied,* 336 U.S. 947, 69 S.Ct. 809, 93 L.Ed. 1103 (1949). *See also State v. Pattioay,* 78 Hawai'i 455, 896 P.2d 911 (1995).

However, even if we assume the search and seizure violated the PCA, suppression of the evidence was not required. *See Hayes v. Hawes,* 921 F.2d 100 (7th Cir.1990); *United States v. Wolffs,* 594 F.2d 77 (5th Cir.1979); *United States v. Hartley,* 486 F.Supp. 1348 (M.D.Fla.1980), *aff'd,* 678 F.2d 961 (11th Cir. 1982); *Taylor v. State,* 645 P.2d 522 (Okla. Crim.App.1982); *State v. Valdobinos,* 122 Wash.2d 270, 858 P.2d 199 (1993).

Contrary to defendant's suggestion, *People v. Tyler,* 854 P.2d 1366 (Colo.App.1993), *rev'd on other grounds,* 874 P.2d 1037 (Colo.1994), does not require a different result.

In *Tyler,* defendant was convicted of the possession, distribution, and sale of a controlled substance. She moved to suppress evidence of a drug sale she had made in her house, located off-base, to an undercover agent of the United States Army Criminal Investigation Division. A division of this court noted that violations of the PCA do not automatically trigger an exclusionary rule, but that no justification had been shown for the military's participation in an undercover drug investigation of a civilian in her off-base activities. The panel thus concluded that the evidence should have been suppressed.

In contrast, here, other than the claimed violation of the PCA, no reasons were presented which justified exclusion of the evidence. Accordingly, the trial court did not err in denying defendant's motion to suppress.

### III.

Defendant next contends the trial court erred in not suppressing her post-arrest, incustody statement to law enforcement officers. She claims the statement was made without a proper advisement or waiver of her rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We disagree.

■ A waiver of *Miranda* rights must be knowingly, intelligently, and voluntarily made, and unless and until such warnings and waiver are demonstrated, any statement made by the suspect is inadmissible at trial. *People v. Trujillo,* 785 P.2d 1290 (Colo.1990). Whether a waiver is voluntary, knowing, and intelligent requires consideration of the totality of the circumstances surrounding the custodial interrogation. *People v. Jiminez,* 863 P.2d 981 (Colo.1993).

Here, defendant was interviewed shortly after her arrest and while in jail. After an evidentiary hearing in which one of the interviewing detectives testified and the taped interview was played, the trial court found that: (1) defendant had invited the interview; (2) there was no evidence of coercion by the officers; (3) although defendant had interrupted the officers numerous times during the *Miranda* advisement, she was nevertheless fully advised of her rights and understood them; and (4) she talked willingly to the officers.

Taking into account the totality of the circumstances, the trial court found that her statement was voluntary and admissible. Because the court applied the proper legal standard and there is record support for its findings, its ruling must be upheld. *People v. Jiminez, supra.*

### IV.

■ Defendant next contends the trial court abused its discretion in admitting evidence regarding her civil lawsuit with the

victim, and also in admitting other facts surrounding their relationship as evidence of defendant's motive and malice. We disagree.

The prosecution maintained that this evidence would have been proffered in the civil trial between defendant and the victim, but for the victim's death the week before that trial was to begin. The evidence, which concerned such matters as defendant's allegedly bigamous marriage, her false claims of pregnancies, and other false and fraudulent activities on her part, admittedly portrayed defendant as an evil, conniving, and manipulative person. However, it supported the prosecution's theory that defendant murdered the victim to prevent exposure of this evidence in the civil trial and thus established a motive for the killing.

■■■ A trial court has substantial discretion in deciding questions concerning the admissibility of evidence and the determination of its relevancy, probative value, and prejudicial impact. *People v. Moya*, 899 P.2d 212 (Colo.App.1994). Absent an abuse of discretion, a trial court's ruling concerning the relative probative value and prejudicial impact of the evidence will not be disturbed on review. *People v. Gibbens*, 905 P.2d 604 (Colo.1995).

■■■ A trial court abuses its discretion only if, under the circumstances, its decision is manifestly arbitrary, unreasonable, or unfair. *People v. Gibbens, supra; People v. McCoy*, 944 P.2d 584 (Colo.App.1996).

Although the disputed evidence here was voluminous, the trial court did not err in determining that it showed defendant's motive and malice. Further, each time such evidence was introduced, the court gave a limiting instruction advising the jury the evidence was to be used only to show malice and motive on defendant's part and for no other purpose. *See People v. McKibben*, 862 P.2d 991 (Colo.App.1993) (involving similar admonitory instruction).

Under these circumstances, we perceive no abuse of discretion by the trial court in admitting this evidence.

## V.

Defendant next contends the cumulative effect of the trial court's evidentiary errors precluded her from receiving a fair trial. However, because we have found no errors in the trial court's evidentiary rulings, there can be no cumulative error. *See People v. Rowerdink*, 756 P.2d 986 (Colo.1988).

## VI.

■■■ Defendant next asserts that her advisement under *People v. Curtis*, 681 P.2d 504 (1984) was insufficient because: (1) the trial court did not adequately advise her about the scope of the prosecution's possible cross-examination; and (2) the court failed to find the waiver of her right to testify was voluntary. We disagree.

■■■ *Curtis* requires that a defendant's waiver of his or her right to testify be made intelligently and competently. *People v. Gray*, 920 P.2d 787 (Colo.1996). A trial court's determination that a defendant effectively waived the right to testify will be upheld if it is supported by competent evidence. *Roelker v. People*, 804 P.2d 1336 (Colo.1991).

■■■ The validity of a waiver is based upon the totality of the circumstances. If the record reflects the defendant was apprised of the right to testify and understood the probable consequences of testifying, the trial court's finding of a valid waiver will be upheld. *People v. Turley*, 870 P.2d 498 (Colo.App.1993).

Here, the trial court questioned defendant in detail regarding the prosecutor's right to cross-examine her if she chose to testify and regarding the voluntariness of her decision not to testify. It is apparent from the record that defendant's equivocation surrounding this decision was based upon her uncertainty about the scope of the possible cross-examination.

■■■ Nevertheless, we conclude the trial court's advisement was sufficient. Except for informing a defendant concerning the prosecution's use of prior felony convictions, a trial court providing a *Curtis* advisement is not required to advise a defendant regarding

all possible areas of cross-examination. *See People v. York*, 897 P.2d 848 (Colo.App.1994) (trial court not required to advise a defendant about every strategic consequence of testifying, nor about the consequences of testifying to specific facts).

We further conclude the totality of circumstances supports the trial court's determination that defendant effectively waived her right to testify. *See People v. Gray, supra* (defendant's statement that she did not want to testify is evidence of voluntary waiver).

## VII.

Nor are we persuaded by defendant's argument that the trial court erred in denying her motion for a mistrial based upon two specific aspects of the prosecution's closing argument.

A trial court has broad discretion to grant or deny a mistrial, and its decision will not be disturbed on appeal absent gross abuse of discretion and prejudice to the defendant. *People v. Collins*, 730 P.2d 293 (Colo.1986); *People v. Dooley*, 944 P.2d 590 (Colo.App.1997).

Whether a prosecutor's statements constitute inappropriate prosecutorial argument is a matter within the trial court's discretion. A trial court must determine whether the prosecutorial misconduct in all probability influenced the jury's result or affected the fairness of the proceedings. *Harris v. People*, 888 P.2d 259 (Colo.1995).

Claims of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence before the jury. Such evaluations are best done by the trial court. *People v. Gutierrez*, 622 P.2d 547 (Colo.1981); *People v. Walters*, 821 P.2d 887 (Colo.App.1991).

### A.

According to defendant, the prosecutor impermissibly commented on her failure to testify by referring to her failure to put on alibi witnesses, and that such error justified the granting of a mistrial. We disagree.

A prosecutor's comments regarding a defendant's failure to produce alibi witnesses are proper comments on the evidence. *People v. Medina*, 190 Colo. 225, 545 P.2d 702 (1976); *People v. Marioneaux*, 44 Colo. App. 213, 618 P.2d 678 (1980).

Here, in its rebuttal, the prosecutor reminded the jury of a taped interview defendant gave to law enforcement officers after her arrest in which defendant mentioned she had nine alibi witnesses. However, this remark did not directly refer to defendant's failure to testify. The prosecutor was simply noting that defendant had failed to produce the claimed alibi witnesses to account for her whereabouts on the date of the murder.

The prosecutor's remark did not refer to her co-defendant's failure to testify because, when examined in context, the co-defendant was not one of the nine alibi witnesses to whom defendant had referred. This isolated remark also was made in response to defense counsel's summation and the prosecutor is afforded some latitude in responding to the defense's closing argument. *See People v. Vialpando*, 804 P.2d 219 (Colo.App.1990).

### B.

Defendant also asserts that the trial court should have granted a mistrial based upon a portion of the prosecutor's argument which, according to defendant, contained patriotic statements designed to invoke the passion and prejudice of the jury. Again, we disagree.

At the end of the rebuttal argument, the prosecutor requested the jury, "on behalf of the people of the State of Colorado, and particularly on behalf of those in that group for whom the memory of [the victim] endures," to return verdicts of guilty "based on the evidence and the inescapable truth which flows from the totality of that evidence."

However, we conclude that this statement did no more than to humanize the victim, *see People v. Marin*, 686 P.2d 1351 (Colo.App. 1983), and that it did not rise to the level of patriotic zealotry or the "impermissible oratorical excess" disapproved by the supreme

court in *Harris v. People, supra,* 888 P.2d at 265.

### C.

Although defendant failed to object to other parts of the prosecutor's closing argument, she nevertheless asserts that the closing argument as a whole constituted plain error. We have reviewed the closing argument and reject this contention. *See People v. Marin, supra.*

### VIII.

■ Finally, defendant asserts that the trial court erred in denying the jury's request to review certain parts of the trial testimony. We do not agree.

During its deliberations the jury requested transcripts of the testimony of four witnesses. The jury did not specify whether it wanted all or part of the testimony.

Transcripts were unavailable and, after learning it would take about 13 and one-half hours to read back the testimony, the trial court solicited the parties' positions regarding an appropriate response to the jury's request. Defendant's position was that the request should be honored. Co-defendant opposed reading back the testimony. The People took no set position, suggesting instead that the jury be told how long it would take to read back the testimony, and that it be given the option of relying on its collective memory.

Following this conference with counsel, the trial court advised the jury that transcripts of the testimony had not been prepared and that the requested procedure would involve the court reporter reading back the testimony, which would take about 13 and one-half hours. The trial court then stated:

> Based on your request, the Court's view is that you should rely upon your collective memories of the testimony that was given. And if you have further requests, the Court would consider that, but that is the procedure that would be followed.
>
> Thank you. Please return to your deliberations.

■ The reading of all or part of the testimony of one or more witnesses at trial at the specific request of the jury during their deliberations is discretionary with the trial court. *Settle v. People,* 180 Colo. 262, 504 P.2d 680 (1972); *Franklin v. People,* 734 P.2d 133 (Colo.App.1986).

■ In exercising its discretion, the trial court should consider whether reading back certain testimony would unduly call attention to it, the difficulty involved in reading back the testimony, whether the jury's request is reasonably well-focused, and the amount of time the procedure would consume. *United States v. Akitoye,* 923 F.2d 221 (1st Cir.1991); *United States v. Damsky,* 740 F.2d 134 (2d Cir.), *cert. denied,* 469 U.S. 918, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984).

Here, the jury's request was relatively broad, not focused on a particular aspect of the witnesses' testimony, and the reading would have been very time-consuming. Also, while the trial court did refuse the reading, its refusal was not unconditional, and left the door open to further requests by the jury. *See United States v. Akitoye, supra* (upholding refusal of readback request under similar circumstances). Under these circumstances, we therefore conclude the trial court did not abuse its discretion by proceeding in this manner.

Judgment affirmed.

CRISWELL and DAVIDSON, JJ., concur.