**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Trevor P. JONES, Defendant–Appellant.**

**No. 97CA1568.**

Colorado Court of Appeals,
Div. A.

May 13, 1999.

Certiorari Denied Jan. 18, 2000.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Kathleen M. Byrne, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Claudia Brett Goldin, Deputy State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Trevor P. Jones, appeals the judgments of conviction entered on jury verdicts finding him guilty of murder in the first degree (felony murder), reckless manslaughter, robbery, and conspiracy to commit robbery. We affirm in part, vacate in part, and remand with instructions.

Defendant agreed to sell a gun to the victim. Before the sale, however, he and a friend decided that, after giving the gun to the victim in exchange for money, defendant would retake possession of the gun from the victim "using some excuse" and would then keep both the gun and the money.

Thereafter, defendant and his friend met the victim to consummate the transaction. When the two entered the back seat of a vehicle in which the victim was a front seat passenger, defendant sat directly behind the victim. Defendant handed the gun to the victim and received the money. He then asked the victim to return the gun so he could demonstrate how to load it. When the victim complied, defendant loaded the gun, chambered a round, and told the victim that it was "ready to go."

Then, still holding the gun, defendant exited the vehicle, approached the front passenger window, and said, "You better not say anything or this'll come back on you." The gun then discharged, fatally wounding the victim.

While defendant was charged with first degree murder after deliberation, the jury acquitted him of that charge and instead convicted him of reckless manslaughter. Defendant was also found guilty of felony murder with robbery as the predicate felony, robbery, and conspiracy to commit robbery.

Defendant was sentenced to life imprisonment without parole for felony murder, six years for reckless manslaughter, eight years for robbery, and eighteen months for conspiracy to commit robbery, with all sentences to run concurrently. This appeal followed.

## I.

■ The parties assert, and we agree, that defendant cannot be convicted of both felony murder and reckless manslaughter for the same killing. *See People v. Leske*, 957 P.2d 1030 (Colo.1998); *People v. Bartowsheski*, 661 P.2d 235 (Colo.1983); *People v. Lowe*, 660 P.2d 1261 (Colo.1983). Accordingly, those two convictions must be vacated, and only one conviction may enter for the homicide. *See People v. O'Neill*, 803 P.2d 164 (Colo.1990).

However, the parties disagree as to which homicide conviction to retain. Defendant contends that the reckless manslaughter conviction must stand, while the People assert that it is the felony murder conviction that must be upheld. We agree with the People.

■ In deciding which of two convictions to retain under these circumstances, a court should enter as many convictions and impose as many sentences as are legally possible so as fully to effectuate the jury's verdict. *People v. Glover*, 893 P.2d 1311 (Colo.1995); *People v. Fisher*, 926 P.2d 170 (Colo.App.1996).

■ Defendant notes, correctly, that he cannot be convicted of both felony murder and robbery because robbery, as the predicate felony, is a lesser-included offense of felony murder. *See People v. Rodriguez*, 914 P.2d 230 (Colo.1996); *People v. Bartowsheski, supra.* Thus, he reasons, the jury's verdict will be maximized by vacating the felony murder conviction because, in that way, the robbery and reckless manslaughter convictions will thereby stand, retaining the highest number of convictions and sentences. He acknowledges that vacating the felony murder conviction will result in a lower sentence, but he argues that considering punishment when determining how best to effectuate a jury's verdict undermines the division between fact-finding and sentencing.

■ Contrary to defendant's contention, existing case law indicates that we are to take into account the length of the sentences in making this determination. For example, as noted in *People v. Glover, supra*, 893 P.2d at 1315: "In each of the preceding cases the trial court selected the combination of offenses that produced the most convictions and the longest sentences in order to maximize the effect of the jury's verdicts." *See also People v. Osborne*, 973 P.2d 666 (Colo. App.1998); *People v. Cole*, 926 P.2d 164 (Colo.App.1996).

Further, we do not agree that considering the highest *number* of convictions and the highest *number* of sentences is the exclusive directive under *People v. Glover, supra*. Instead, we conclude that a court should also consider the General Assembly's felony classification of the various crimes committed by the defendant, together with the length of sentences, because "maximizing" a jury's verdict in this context connotes giving effect to the most serious offense.

■ Here, if we vacate the felony murder conviction as defendant proposes, he would then stand convicted of reckless manslaughter, a class four felony; robbery, a class four felony; and conspiracy to commit robbery, a class five felony. Although the total number of convictions is then reduced only by one, the sentence would drop from life without

parole to eight years. However, if we vacate the reckless manslaughter and robbery convictions as the People propose, defendant would then stand convicted of felony murder, a class one felony, and conspiracy to commit robbery, a class five felony, since we find no reason the conspiracy conviction cannot stand. Although the total number of convictions is then reduced by two, the life sentence without parole remains.

Because the latter option produces the longest sentence and effectuates the felony with the highest classification, we conclude that it maximizes the effect of the jury's verdict.

■ Defendant, nevertheless, relies upon language in *People v. Bartowsheski, supra,* 661 P.2d at 247, that requires a court to "give as much effect to the jury's resolution of the *issues* submitted to it as can be done without running afoul of the defendant's constitutional and statutory rights." (emphasis added) He asserts that vacating the felony murder conviction would best reflect the jury's resolution of the issues presented to it here because it would maximize the elements established by the verdict. He points out that the jury made a factual finding that he acted recklessly when he caused the victim's death, and without retaining the manslaughter verdict, a court cannot give effect to this critical finding. Further, he contends, all elements of felony murder other than "causing the death of another" are reflected in the robbery conviction, and "causing the death of another" is in turn reflected in the manslaughter conviction.

■ We reject this contention. The "issues" presented to a jury in this context means the offenses presented for the jury's consideration, not simply the elements of each. *See People v. Bartowsheski, supra,* 661 P.2d at 247 ("because the two *crimes* of first degree murder and robbery do not preclude entry of separate judgments of conviction on both offenses, the trial court should enter judgments of conviction on those two *crimes*" (emphasis added)).

■ Relying on *People v. Lowe, supra,* defendant further asserts that, because vacation of one conviction is required by the rule of lenity, it would be anomalous under that rule to retain the felony murder conviction when the jury has decided that the defendant is "less culpable" by convicting him of the lesser included offense of reckless manslaughter. Again, we disagree.

■ There are several flaws in this assertion. First, felony murder does involve a culpable mental state. It requires the actor to act knowingly in perpetrating a robbery, although it does not specifically require any *mens rea* with regard to the death associated with commission of the felony.

Second, although the felony murder doctrine has been criticized because of the general proposition that liability for an act should be commensurate with the mental state of the perpetrator, *see People v. Meyer,* 952 P.2d 774 (Colo.App.1997) (Casebolt, J., specially concurring), degrees of culpability are not necessarily *solely* reflected in the mental state required for a particular crime.

While felony murder may be characterized as a strict liability crime because it requires no intent to kill, *People v. Hickam,* 684 P.2d 228 (Colo.1984), the General Assembly nevertheless has the authority to determine that a high degree of culpability exists when a death occurs in the course of commission of a felony. *See People v. Morgan,* 637 P.2d 338 (Colo.1981).

■ Third, the rule of lenity does not stand for the proposition that a court must show "leniency." Rather, it is a rule of statutory construction to be used when a statute is ambiguous, and here, no such ambiguity exists. *See People v. Leske, supra.*

Accordingly, we reject defendant's contention.

II.

Defendant next contends that the felony murder verdict must be vacated because it is

inconsistent with the reckless manslaughter verdict and the jury's findings of culpability. We disagree.

 If the existence of an element of one crime negates the existence of a necessary element of another crime, guilty verdicts on both are legally and logically inconsistent and should not be sustained. *People v. Frye,* 898 P.2d 559 (Colo.1995); *People v. Lee,* 914 P.2d 441 (Colo.App.1995).

Here, the jury, through its reckless manslaughter verdict, found that the killing was reckless. Because the jury rejected murder after deliberation and second degree murder, it must have concluded that defendant's *mens rea* was not intentional or knowing. Defendant argues that to find also that the "knowing" mental state required for robbery supplies the mental state for the killing is inconsistent. He argues that he cannot logically possess two different mental states simultaneously while performing a single criminal act against a single victim. Again, we disagree.

First, the existence of a recklessness *mens rea* in reckless manslaughter does not, in any way, negate the existence of a necessary element of felony murder. Felony murder does not require the existence of a mental state *concerning the killing. See People v. Atkins,* 844 P.2d 1196 (Colo.App.1992). It only requires a mental state for the underlying felony.

Moreover, defendant misconstrues the jury's findings. While we agree that the jury found, through its reckless manslaughter verdict, that defendant recklessly caused a death, the jury also made a separate finding, through its felony murder verdict, that defendant "knowingly" committed robbery and that a death occurred in the course of the robbery. The jury, in its felony murder verdict, made *no* finding as to defendant's mental state regarding the killing. Rather, the only finding it made regarding the killing was that defendant was reckless.

Hence, contrary to defendant's assertion, the jury did not find that he possessed two different mental states simultaneously while committing a single criminal act against a single victim. Instead, it found that he possessed two different mental states while committing two criminal acts, robbery and homicide, against a single victim. *Cf. People v. Lee, supra* (vacation of conviction required because defendant could not possess more than one mental state in firing weapon at one victim).

## III.

 Defendant contends that, unless the felony murder conviction is vacated, his sentence will not accurately reflect the jury's findings and will, therefore, violate his constitutional right to trial by jury. He asserts that if we vacate the reckless manslaughter conviction, the jury's more specific mitigating finding regarding his culpable mental state will be ignored, thereby eviscerating the effect of the jury's decision to convict him of reckless manslaughter. We disagree.

 The General Assembly has the exclusive authority to define criminal offenses. It alone may define proscribed conduct and the culpable mental state that must accompany such conduct. *Palmer v. People,* 964 P.2d 524 (Colo.1998).

As relevant here, the General Assembly has defined reckless manslaughter to require that a defendant act "recklessly," robbery to require that a defendant act "knowingly," and felony murder not to require a culpable mental state as to the killing. *See* §§ 18–3–104(1)(a), 18–4–301(1), 18–3–102(1)(b), C.R.S. 1998. As noted above, felony murder is a strict liability offense that requires a culpable mental state only for the underlying felony. *People v. Meyer, supra.*

Here, the jury found through its verdicts that defendant "recklessly" caused the victim's death, "knowingly" committed robbery, and that a death occurred in the course of or in furtherance of the robbery, or in the immediate flight therefrom. By vacating the reckless manslaughter conviction, we are not ignoring its specific finding that defendant

acted "recklessly". Rather, we are giving effect to its finding that he "knowingly" committed a robbery and that a death occurred in the course of or in furtherance of the robbery or in the immediate flight therefrom.

Therefore, we reject the contention that, unless the felony murder conviction is vacated, defendant's sentence will violate his right to trial by jury.

## IV.

▇▇ Relying upon *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) and *United States v. Bryant*, 892 F.2d 1466 (10th Cir.1989), defendant asserts that, unless the felony murder conviction is vacated, the sentences imposed will violate his right to due process. Essentially, he contends that he has a due process right to be sentenced based on accurate information. We find no violation.

Both of the cited cases examined whether a trial court had improperly considered "materially untrue" information or nonexistent or constitutionally invalid convictions for purposes of sentencing. Because we determine below that defendant's felony murder conviction is not constitutionally invalid, and because neither the trial court nor this court has considered materially untrue information in reaching these determinations, those cases have no application here.

## V.

Defendant contends the felony murder statute as applied to him violates his right to equal protection by imposing a greater punishment for the felony murder conviction, which does not require proof of a culpable mental state, than for the reckless manslaughter conviction. Specifically, he contends that, because the jury actually convicted him of a form of homicide requiring proof of a mental state, and he actually received a greater punishment for the offense requiring the lesser mental state, this application violates equal protection. We disagree.

▇▇ Statutes which provide different punishments for the same acts committed under like circumstances by persons in like situations violate a person's right to equal protection of the laws. However, the fact that felony murder does not require proof of a mental state independent of the mental state associated with the underlying felony does not violate equal protection, even though other less serious forms of homicide do require proof of a mental state. Thus, felony murder is distinguishable from other forms of homicide so as not to violate equal protection. *See People v. Morgan, supra.*

In *People v. Morgan, supra*, the supreme court rejected a similar argument. There, the defendant argued that, because criminally negligent homicide was the more serious crime based on its requirement of a culpable mental state, felony murder could not constitutionally be punished more severely than criminally negligent homicide. The court held that the General Assembly was free to determine the severity of the punishment to be imposed on separately defined crimes:

> The legislature may provide that a homicide committed during defendant's participation in a felony shall be punishable as first degree murder. This legislative decision is in no way rendered arbitrary by a legislative determination that criminally negligent homicide, although requiring a culpable mental state, is a less serious offense.

*People v. Morgan, supra*, 637 P.2d at 345; *see also People v. Black*, 915 P.2d 1257 (Colo. 1996).

▇▇ Here, as in *Morgan*, the legislative decision that a homicide committed during defendant's participation in a felony will be punished as first degree murder is not rendered arbitrary by a legislative determination that reckless manslaughter, although requiring a culpable mental state, is a less serious offense.

Defendant cites *People v. Nguyen*, 900 P.2d 37 (Colo.1995) to support his proposition that the statutory scheme is constitutionally infirm. In that case, the supreme court found that the second degree assault statute

violated equal protection guarantees because it imposed a harsher penalty for less serious criminal conduct than did the first degree assault statute.

However, that case involved different punishments for the same or very closely related crimes. *See People v. Black, supra.* In contrast, here, there are different punishments for different crimes. And, felony murder is not "less serious conduct" than reckless manslaughter, as we have concluded above. Therefore, *Nguyen* does not apply.

## VI.

Defendant contends that, because there was insufficient evidence that he accomplished his taking of the gun by the use of force, threats, or intimidation, the trial court erred by denying his motion for judgment of acquittal as to the robbery, and therefore the felony murder charge. We disagree.

■ When ruling on a motion for judgment of acquittal, the trial court determines whether the evidence, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. We will not disturb the trial court's ruling on such a motion absent an abuse of discretion. *People v. Manzanares,* 942 P.2d 1235 (Colo.App. 1996).

Here, defendant contends that the evidence shows he took the gun by simple trickery or deception and without force, threats, or intimidation. Therefore, he argues, he engaged in an act of theft rather than robbery. He maintains that the taking was complete at the point he had possession of both the gun and the money, and that any force, threats, or intimidation occurred after the taking was complete.

■ However, the gravamen of robbery is the application of physical force or intimidation against the victim at any time during the course of the transaction culminating in the taking of property from the victim's person or presence. There is no requirement that the application of force or intimidation must be virtually contemporaneous with the taking. *See People v. Bartowsheski, supra; People v. Fox,* 928 P.2d 820 (Colo.App.1996).

■ Here, eyewitnesses testified that, upon regaining possession of the gun from the victim, defendant immediately loaded it and told the victim it was "ready to go." One of the eyewitnesses testified that defendant then briefly pointed the loaded gun at the victim's head.

Both eyewitnesses testified that defendant then exited the vehicle, and as he did, he stated, "What's up now, bitch?" One of the witnesses testified that he believed such a statement to be one "of dominance, like when you have the upper hand, kind of like fighting words." That witness also testified as to defendant's threat to the victim when he approached the passenger side window that "you better not say anything or this'll come back on you." Also, he was obviously pointing the gun at the victim since its discharge had a fatal result.

Based on such evidence, we conclude that reasonable jurors could find that defendant did not complete the transaction which culminated in the taking of the gun from the victim until after the shooting. Further, they could also conclude that, through his statements and actions, defendant used force, threats, or intimidation against the victim during the course of that transaction.

Accordingly, we find no abuse of discretion in the trial court's denial of defendant's motion for judgment of acquittal. *See People v. Manzanares, supra.*

## VII.

Defendant contends the trial court committed plain error by misleading the jury about its sentencing role. Specifically, he contends the trial court's instruction to the jury during voir dire and in the final instructions that it would decide punishment and determine sen-

tencing was misleading because it urged the jury not to consider punishment, and assured it that the court would have the power to determine an appropriate sentence. But, defendant notes, conviction of felony murder requires a court to impose a life sentence without possibility of parole. We reject this contention.

■ When, as here, a defendant does not object to a trial court's instructions to the jury, we apply a plain error standard of review. Plain error occurs when an appellate court, after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Wilson v. People,* 743 P.2d 415 (Colo.1987).

■ Here, we find nothing in the record that would lead us to conclude that giving such instructions constituted plain error. The court's statements were simply an explanation to the jurors of their role and the court's role in the trial. *See also People v. Saiz,* 923 P.2d 197 (Colo.App.1995) (similar instruction was, at most, harmless error).

## VIII.

Defendant contends the trial court erred by refusing his tendered instruction concerning the timing of the formation of the intent to commit the underlying felony of robbery. We disagree.

■ A defendant is entitled to a theory of defense instruction if the record contains any evidence to support such theory. *People v. Marquez–Lopez,* 952 P.2d 788 (Colo.App. 1997).

■ So long as the jury is adequately instructed on the law, the trial court has discretion to determine the form of jury instructions. *See People v. Coria,* 937 P.2d 386 (Colo.1997). And, absent an abuse of discretion, we will not disturb the trial court's ruling concerning a jury instruction. *People v. Burke,* 937 P.2d 886 (Colo.App.1996).

Here, defendant tendered the following jury instruction:

In order to find that the offense of Felony Murder has been proved, you must find that [defendant] had the intent to commit the crime of Robbery either prior to or concomitant with the killing of [victim].

Defendant explained that the instruction was based on *People v. Kittrell,* 786 P.2d 467 (Colo.App.1989), and he asked that it be included in order to clarify the "timing issues" for the jury.

■ In *Kittrell,* unlike here, the defendant's theory of the case was that he had formed the intent to steal *after* he had killed the victim. Here, there is no evidence that defendant committed the robbery after he shot the victim. Further, defendant's theory of the case did not include any assertion that he formed the intent to rob the victim or commit theft after he killed the victim. Rather, his theory of the case was that he "wanted to trick [the victim] into giving him the gun by pretending to sell it, that is, by offering to show him how the gun worked, he would take it back in his hand and leave with both the money and the gun." Defendant thus conceded in his theory of the case instruction that he had formed the intent to at least commit theft before the victim's killing.

Hence, the trial court did not abuse its discretion in refusing to give the instruction. *See People v. Burke, supra.*

## IX.

Defendant's final contention is that the prosecutor made improper remarks during closing argument and that the trial court erred by overruling his objection to one such remark. We disagree.

■ The determination whether a prosecutor's statements constitute inappropriate prosecutorial argument is a matter within the trial court's discretion. A trial court must determine whether the prosecutorial misconduct in all probability influenced

the jury's result or affected the fairness of the proceedings. *People v. Coit,* 961 P.2d 524 (Colo.App.1997).

■ Here, defendant asserts that two of the prosecutor's remarks were improper. First, the prosecutor argued, "There's a lesser charge that the court is required to give you all by law ... it's a lesser charge of robbery, it's theft from a person, but this isn't a case of theft from a person." Defendant contends that this demeaning remark implied that the trial court gave the instruction reluctantly and as an empty gesture.

However, defendant did not object to the remark. Therefore, our review is limited to determining whether any error rises to the level of plain error. *See Wilson v. People, supra.*

Defendant requested the trial court to instruct the jury on theft as a lesser non-included offense of robbery. The trial court, after determining that there was a rational basis to acquit defendant of robbery but still convict him of theft, instructed the jury pursuant to that request.

Therefore, the prosecution's remark that the court was required to give the theft instruction was correct. *See People v. Bielecki,* 964 P.2d 598 (Colo.App.1998) (lesser non-included offense instruction may be given only if the defendant requests it or consents). Accordingly, the prosecutor's remark was not improper, and thus, we find no error, let alone plain error.

■ The prosecutor further remarked during rebuttal closing argument that:

[Defense counsel tells you that] [w]hat [defendant] is responsible for is what is in their theory of the defense, and, ladies and gentlemen, be clear, this is something that they have written, this is not something the prosecution gives you or the court writes, this is what they have written and they are giving you.

Defense counsel objected, and the trial court overruled the objection noting, outside the jury's hearing, that: "It is an instruction from the court, but it's your version. It's not my version or the prosecution's version, so to that extent what [the prosecutor] said is correct."

Defendant contends that the trial court, by overruling the objection and allowing the prosecutor to repeat the remark thereafter, signaled to the jury that it approved of the distinction between the instructions tendered by defendant and all other instructions.

While we agree that trial courts should refrain from drawing attention to the "court's instructions" as opposed to "defendant's instructions" in order to avoid the danger that such remarks may be perceived as a comment on the evidence, the trial court here did not comment on the evidence, the merits of the case, or the instructions. *See People v. Coria, supra.* The trial court's act of simply overruling defendant's objection and allowing the prosecution to continue does not rise to the level of an improper comment.

Moreover, the trial court's statement that it was the defense that drafted the theory of defense instruction was correct. Indeed, the instruction expressly stated that, "It is the defense's contention that ..." and, "He further contends that...."

Accordingly, the trial court did not improperly comment on the evidence or the instructions or abuse its discretion by overruling defendant's objection and allowing the prosecution to continue. *See People v. Coria, supra; People v. Coit, supra.* Nor, contrary to defendant's contention, were the prosecutor's comments an expression of personal opinion about the merits or credibility of a defense, a witness, or the defendant.

The judgments of conviction for reckless manslaughter and robbery are vacated. The judgments of conviction for murder in the first degree (felony murder) and conspiracy to commit robbery are affirmed, and the cause is remanded for correction of the mittimus to reflect these changes.

Chief Judge HUME and Judge ROY concur.