**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Odell SHEPHERD, Jr., Defendant–Appellant.**

**No. 99CA2528.**

Colorado Court of Appeals, Div. III.

Sept. 27, 2001.

Certiorari Denied March 18, 2002.

Ken Salazar, Attorney General, Peter J. Cannici, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Karen N. Taylor, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Odell Shepherd, Jr., appeals the judgment of conviction entered upon a jury verdict finding him guilty of first degree burglary. He also appeals his adjudication as an habitual criminal. We affirm.

### I. Background

Defendant believed that he was in an intimate relationship with the victim. Following

an altercation with the victim in July 1998, defendant was charged with various crimes. He pleaded guilty to harassment and criminal mischief, and a restraining order was entered enjoining him, among other things, from having any contact with the victim.

Immediately following his court appearance, defendant telephoned the victim. Consequently, he was arrested for violating the restraining order. Following his release, defendant decided he wanted to talk face-to-face with the victim.

Wearing dark clothing, he went to the victim's neighborhood around midnight and parked his car about a mile from her house. As he approached her house, he saw a commercial van in the driveway, and upon reaching the back door to the house, he heard moaning and voices emanating from the victim's upstairs bedroom. He broke into the house and rushed towards the staircase and up the stairs. Defendant asserted that he broke into the house and rushed up the stairs believing that the victim might need rescue. However, according to the victim and the two men in the house that night, defendant came up the stairs yelling profanities and threatening the victim.

Defendant met a man on the staircase. When the two scuffled, defendant attempted to pull and use a knife on the man. Defendant was ultimately subdued, arrested, and convicted of first degree burglary, a class 3 felony; criminal mischief, a class 4 felony; and violation of a restraining order, a class 1 misdemeanor.

Based on three prior out-of-state felony convictions, the trial court adjudicated defendant an habitual criminal and sentenced him to concurrent terms of forty-eight years for burglary, twenty-four years for criminal mischief, and two years for violating a restraining order.

Defendant appeals only his burglary conviction and his habitual criminal sentences.

## II. Lack of Instruction on Choice of Evils Defense

Defendant contends that the trial court erred in not *sua sponte* instructing the jury on the affirmative defense of choice of evils. We disagree.

Where, as here, a defendant failed to request an instruction at trial, appellate review is limited to determining whether plain error occurred. *People v. Garcia*, 981 P.2d 214, 217 (Colo.App.1998). In the context of instructional error, plain error does not occur unless review of the entire record demonstrates that the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the conviction. *People v. Griffin*, 867 P.2d 27, 33 (Colo.App.1993). We conclude that no error occurred.

The choice of evils defense is set forth in § 18–1–702, C.R.S.2001. A defendant wishing to invoke this defense must first make a proffer or presentation of evidence supporting the defense to the court outside the presence of the jury; and the court must determine whether, as a matter of law, the claimed facts and circumstances would, if established, constitute sufficient justification for the defendant's alleged conduct. *See* § 18–1–702(2), C.R.S.2001; *Andrews v. People*, 800 P.2d 607, 612 (Colo.1990)(Quinn, J., dissenting); *People v. Brandyberry*, 812 P.2d 674, 678 (Colo.App.1990)("Under the plain language of the statute, evidence in support of the defense must first be proffered or presented to the trial court."); *People v. Weiser*, 789 P.2d 454, 456 (Colo.App.1989)(offer of proof made at motion *in limine* hearing).

Here, defendant did not make an offer of proof to, or other request of, the trial court relating to a choice of evils defense. Indeed, during the instructions conference, defendant explicitly disavowed any reliance on that defense.

In *People v. Strock*, 623 P.2d 42, 45 (Colo.1981), the supreme court noted that the "failure of the trial court to give an instruction on the choice of evils resulted from the election of defense counsel not to lay the foundation required by the statute." Because, at the very least, defendant here made a tactical decision to bypass use of a choice of evils defense, we cannot find error, much less plain error, in the trial court's failure to

instruct upon that defense. *See People v. Strock, supra; People v.' Patrick,* 541 P.2d 320, 322 (Colo.App.1975)(not selected for official publication)(choice of evils defense could not be properly presented to a jury where defendant never obtained the ruling required by § 18–1–702(2)). *See also People v. Close,* 867 P.2d 82, 90–91 (Colo.App.1993).

### III. Prosecutorial Misconduct

Defendant also contends that reversal is warranted because, during closing arguments, the prosecution (1) asked the jury to find him guilty based on evidence of bad character and (2) misstated the law. We are not persuaded.

▮▮▮ Whether closing argument is improper depends upon the nature of the comments and on whether the jury's attention has been directed to something it is not entitled to consider. *People v. Constant,* 645 P.2d 843, 846 (Colo.1982). Claims of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence before the jury. *People v. Coit,* 961 P.2d 524, 530 (Colo.App.1997). Counsel may comment on the evidence admitted at trial, the reasonable inferences that can be drawn therefrom, and the instructions of law given to the jury. *People v. DeHerrera,* 697 P.2d 734, 743 (Colo.1985). Counsel may not misstate or misinterpret the law. *People v. Anderson,* 991 P.2d 319, 321 (Colo. App.1999). The determination whether closing argument is improper is a matter committed to the discretion of the trial court. *People v. Coit, supra.*

### A. Defendant's Bad Character

Initially, we reject defendant's argument that the prosecution's remarks addressed irrelevant and inflammatory issues of defendant's bad character.

▮▮▮ The prosecution's remarks referenced evidence of the relationship between defendant and the victim and defendant's actions toward the victim. They were based on *res gestae* evidence properly admitted by the trial court to provide the jury with a full and complete understanding of the events surrounding the crimes and the context in which the crimes occurred. *See People v. Quintana,* 882 P.2d 1366, 1373 (Colo.1994)(discussing *res gestae* evidence). *See also People v. Bernabei,* 979 P.2d 26, 30 (Colo.App.1998)(noting that *res gestae* rulings have "permitted the admission of evidence of other transactions relating back over a period of weeks"); *People v. Agado,* 964 P.2d 565, 566–67 (Colo.App.1998)(evidence of defendant's argument with girlfriend night before incident gave jury fuller understanding of events surrounding crime); *People v. Allen,* 944 P.2d 541, 546 (Colo.App.1996)(evidence of events leading up to issuance of restraining order admissible in burglary case).

As such, no error was occasioned by those remarks. *See People v. DeHerrera, supra.*

### B. Misstatements of Law

Defendant further contends that the prosecution misstated the law when it remarked once in rebuttal closing argument, "If you break into somebody's house with the intent to rescue someone and contact them while there's a valid restraining order, it's burglary," and later, "[I]t doesn't matter if you believe he went in to rescue her; he's guilty of burglary."

Defendant points out that, under the applicable statute, Colo. Sess. Laws 1971, ch. 121, § 40–4–204 at .427 (formerly codified as § 18–4–202, C.R.S.1998), the crime of burglary required proof of intent to commit a crime at the time defendant entered the victim's house. *See Cooper v. People,* 973 P.2d 1234, 1239 (Colo.1999).

▮▮▮ However, because defendant did not object to these statements, we review them only for plain error. *See People v. Foster,* 971 P.2d 1082, 1085 (Colo.App.1998). Prosecutorial misconduct in closing argument rarely constitutes plain error. *People v. Avila,* 944 P.2d 673, 676 (Colo.App.1997). To constitute plain error, misconduct must be flagrantly, glaringly, or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *People v. Avila, supra.*

Here, the court instructed the jury, consistent with *Cooper*, that the crime of burglary required proof that defendant "entered a building or occupied structure ... with intent therein to commit the crime of Violation of a Restraining Order." During closing argument, the prosecution remarked that the requisite intent was shown by proof of intent to contact the victim in violation of the restraining order, and that:

[L]et's just suppose for a moment that [defendant] is concerned; that he really does think that he must [rescue the victim]. He still is breaking in, he's still armed with a deadly weapon, and he still means to contact [the victim].

. . . .

Even if you believe ... that he intended to go in and complete some sort of rescue operation without contacting her, that is a logical impossibility. Please don't get caught up in some sort of semantic technicality like that. What is prohibited by the statute is the intent you have to have. In contacting [the victim] did you enter with the intent to do it? No question.

These remarks provide the context for the remarks challenged on appeal. When read not in isolation, but in context, the challenged remarks do not suggest that a burglary is committed in the absence of an intent to commit a crime at the time of entry; rather, the remarks suggest that the requisite criminal intent could co-exist with another, more beneficent intent as well.

Defendant contends, however, that even this type of argument misstates the law. He erroneously relies, in this regard, upon the choice of evils principles embodied in § 18–1–702. Acting upon good motives is not, in and of itself, sufficient to invoke those principles to avoid responsibility for violating the law. *See* 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 5.4(a), at 630 (1986). *See also Andrews v. People, supra,* 800 P.2d at 609 (majority opinion) (Colorado's choice of evils defense arises from "a real emergency involving specific and imminent grave injury that presents the defendant with no alternatives other than the one taken"); 2 American Law Institute, *Model Penal Code and Commentaries*

§ 3.02, at 19–21 (1985)(New York's similarly worded choice of evils defense treats "harshly the person who makes a mistake about the surrounding circumstances or the necessity for his conduct").

■ In light of this consideration, and the fact that defendant consciously chose not to rely on the choice of evils defense at trial, we cannot conclude that the prosecution's remarks were plainly erroneous.

*IV. Habitual Criminal Proceedings:*

*Challenging Out of State Convictions*

Defendant contends that the trial court erred in refusing to allow him to pursue constitutional challenges to the three out-of-state convictions supporting his habitual criminal adjudication. We disagree.

Defendant had been convicted of felonies in the state of California in 1980, 1987, and 1989. As relevant here, under § 16–5–402(1), C.R.S.2001, a defendant convicted of a felony, other than a class 1 felony, in Colorado or in any other state must ordinarily bring a collateral attack on the conviction no later than three years after it is obtained. *See People v. Landis,* 9 P.3d 1165, 1167 (Colo.App.2000). Section 16–5–402(2)(d), C.R.S.2001, however, permits a belated challenge to prior felony convictions if the failure to seek relief within the three-year period "was the result of circumstances amounting to justifiable excuse or excusable neglect."

■ Whether a defendant has demonstrated justifiable excuse or excusable neglect is a question of fact to be resolved by the trial court. *People v. Wiedemer,* 852 P.2d 424, 442 (Colo.1993). If the record supports the trial court's findings, we will not disturb them on appeal. *People v. Pennington,* 989 P.2d 230, 232 (Colo.App.1999).

Here, defendant argued that his failure to challenge his prior convictions earlier should be excused because: (1) he had no reason to attack any of the prior convictions until he was charged as an habitual criminal in this case; (2) having lived in California until he came to Colorado a year before he committed the crimes here, he would have had no reason to know of Colorado's three-year collat-

eral attack limitation period; and (3) Colorado's three-year limitation period had already expired long before he arrived in Colorado. The trial court rejected these arguments.

In *People v. Windsor*, 876 P.2d 55 (Colo. App.1993), a division of this court confronted a similar situation. The division did not, however, determine whether justifiable excuse or excusable neglect existed for challenging prior convictions when the three-year period expired before the defendant even appeared in Colorado. Noting that the trial court had reached its decision based on an erroneous legal standard, the division remanded the case for reconsideration by the trial court in light of the factors identified by the supreme court in *People v. Wiedemer*, *supra*.

In *People v. Wiedemer*, *supra*, 852 P.2d at 441–42 (footnote omitted), the supreme court noted:

[F]actors such as the existence of circumstances or outside influences preventing a challenge to a prior conviction and the extent to which a defendant having reason to question the constitutionality of a conviction investigates its validity and takes advantage of avenues of relief that are available to him are relevant in determining whether justifiable excuse or excusable neglect exists in a particular case. Also relevant is whether a defendant had any previous need to challenge a conviction, whether he either knew that it was constitutionally infirm or had reason to question its validity, whether he had other means of preventing the government's use of the conviction so that a postconviction challenge was previously unnecessary, as well as the extent of time between the date of conviction and the defendant's challenge and the effect that the passage of that time has on the State's ability to defend against the challenge.

Here, unlike in *Windsor*, the trial court considered all of the *Wiedemer* factors. The court found that there were no circumstances or outside influences preventing defendant from earlier challenging his convictions; that no showing or allegation had been made about whether defendant knew or had some reason to know that his prior convictions

were constitutionally infirm; that defendant, like those who resided in Colorado, had a previous need to challenge convictions, by virtue of the collateral attack limitation statute itself; that no showing was made whether he had other means of preventing the government's use of the conviction; and that the lapse of time between the dates of the convictions and the date defendant challenged them was considerable and potentially prejudicial to the state's ability to defend the validity of the convictions.

The trial court was cognizant of its duty to balance defendant's interest in not having constitutionally infirm convictions used against him, society's interest in maintaining the integrity of the criminal justice system, and the state's interests in preserving the finality of criminal convictions and in implementing habitual criminal sentencing statutes. *See People v. Wiedemer*, *supra*, 852 P.2d at 440. On balance, the court found that defendant's excuses would have been insufficient to permit a belated attack on Colorado convictions, and that defendant should not receive more favorable treatment simply because he had out-of-state convictions and was out of state while the time ran for challenging those convictions.

A defendant is not excused from the limitations period because the defendant felt no reason or need to challenge prior convictions until habitual criminal charges were filed in the present case. *See People v. Mershon*, 874 P.2d 1025, 1036–37 (Colo.1994)(present need to challenge prior convictions created by enactment of § 16–5–402 and decision in *People v. Fagerholm*, 768 P.2d 689 (Colo.1989)); *People v. Stephens*, 837 P.2d 231, 235–36 (Colo.App.1992)(present need to challenge a Michigan conviction in Colorado created by enactment of § 16–5–402). Nor is a defendant excused because the defendant was ignorant of the limitations period. *See People v. White*, 981 P.2d 624, 626 (Colo.App.1998).

We see no reason to apply different rules here, just because defendant lived out of state and incurred out-of-state convictions.

Like Colorado, forty-five other states, and the federal government, California has an

habitual criminal sentencing statute. *See* Cal.Penal Code § 667 (West 1999); Erik G. Luna, *Three Strikes in a Nutshell*, 20 T. Jefferson L.Rev. 1, 2 (1998). If, after 1989, defendant committed a "serious felony" in California, he was eligible to receive a "little habitual" criminal sentence based on his 1980 and 1989 convictions for robbery and attempted robbery. *See* Cal.Penal Code § 667(a)(1) (West 1999). His 1987 conviction for grand theft auto could not be used as a predicate for an habitual criminal sentence; but it could be used as the basis for an enhanced sentence if he again committed felony auto theft. *See* Cal.Penal Code § 666.5 (West 1999).

Despite the fact that his prior convictions could be used to enhance future sentences in California, defendant did nothing to challenge them while living there. He chose to come to Colorado and subject himself to Colorado's laws. He lived here nearly a year before committing the crimes involved in the present case.

■■■■ Under the circumstances, we conclude that defendant was not free of "culpable neglect" in failing to challenge his convictions earlier. *See People v. Wiedemer, supra,* 852 P.2d at 441. The record supports the trial court's finding that he demonstrated no unavoidable hindrance that would cause a reasonably prudent person to neglect a more timely collateral attack. *See People v. Vigil,* 955 P.2d 589, 592 (Colo.App.1997). Because he previously had a meaningful opportunity to challenge his convictions, even though he did not avail himself of it, he was not denied due process by the application of § 16–5–402 to his claims. *See generally People v. Wiedemer, supra,* 852 P.2d at 440–41.

### V. Habitual Criminal Proceedings:

### Admission of Evidence

Defendant contends that his habitual criminal adjudication is invalid because the documents relating to two underlying convictions were not sufficiently authenticated. More specifically, he argues that: (1) the documents were authenticated by a California Department of Corrections case records manager rather than by the clerk of court where the judgments were entered; and (2) the documents contain neither a legible seal nor a certification either that the judges' signatures on the judgments of conviction were genuine or that they were in fact judges when they signed the judgments. We are not persuaded.

■■■■ "Nothing in [the habitual criminal] statute requires that the copies to be introduced come directly and exclusively from the particular courts of record." *People v. Copeland,* 976 P.2d 334, 340 (Colo.App.1998)(admissibility of department of correction records to support prior convictions), *aff'd,* 2 P.3d 1283 (Colo.2000). Nor does CRE 902 require that each and every signature contained within an otherwise properly authenticated set of public documents be certified or embossed with a seal.

Copies of public records are self-authenticating and require no extrinsic evidence to prove their authenticity if they are "certified as correct by the custodian or other person authorized to make a certification, by certificate complying with paragraph (1), (2), or (3) of this rule." CRE 902(4). CRE 902(2) contemplates certification by the signature of a person in his or her official capacity accompanied by a certification, under seal, of an appropriate public officer having a seal that the signer has the official capacity and that the signature is genuine.

■■■■ Here, the contested sets of documents contain department of correction records that are certified as true and correct copies by a person purportedly authorized to make such certifications. That person's authority as well as attestation in due form, is itself certified by original documents, submitted under seal by California's Deputy Secretary of State. This was sufficient under CRE 902(2) and (4). *See People v. Copeland, supra.*

Finally, we reject, as wholly unsupported, defendant's assertion that documents from a department of corrections can only be used to prove an individual's identity, not prior convictions.

Accordingly, we conclude that the evidence was properly admitted and was sufficient to sustain defendant's adjudication as an habitual criminal. *See People v. Copeland, supra.*

*VI. Constitutionality of Statute
Authorizing Judge*

*To Adjudicate Habitual Criminality*

Defendant contends that those provisions of § 16–13–103, C.R.S.2001, authorizing trial courts to adjudicate habitual criminality are unconstitutional. More specifically, he argues that: (1) under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), only a jury can make habitual criminal determinations; and (2) because the title of the bill in which those provisions were enacted did not clearly express the subject matter of the bill, the legislation was invalid under Colo. Const. art. V, § 21.

We decline to address these issues because they were not raised before the trial court. *See People v. Mershon, supra,* 874 P.2d at 1035 n. 13 (court would not consider constitutional challenges to statutes raised for the first time on appeal); *People v. Boyd,* 30 P.3d 819 (Colo.App.2001).

The judgment of conviction and sentence are affirmed.

Judge JONES and Judge MARQUEZ concur.