The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Fernando J. VILLALOBOS,
Defendant–Appellant.

No. 04CA0552.

Colorado Court of Appeals,
Div. I.

April 20, 2006.

Rehearing Denied June 1, 2006.*

Certiorari Denied Oct. 7, 2006.

* Hume, J., does not participate.

John W. Suthers, Attorney General, Paul Koehler, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Samler and Whitson, P.C., Eric A. Samler, Denver, Colorado, for Defendant–Appellant.

DAILEY, J.

Defendant, Fernando J. Villalobos, appeals the judgment of conviction entered upon a jury verdict finding him guilty of first degree felony murder. We affirm.

Owing $5000 to his supplier, drug dealer Leroy Deschawn Bachicha devised a plan to "rip-off" the victim by selling him ten pounds of fake marijuana. Bachicha was nineteen, the victim eighteen, years old.

According to Bachicha, the thirty-three-year-old defendant inserted himself into the plan. Defendant arrived at the house where Bachicha and others were making bricks of fake marijuana. Defendant produced a bag, into which Bachicha placed the false marijuana bricks, and told Bachicha to bring a gun. Defendant, who was already armed with a gun, told Bachicha, "[I]f something goes down, I'm going to kill someone. I'll shoot them, cop or not."

According to Bachicha, defendant insisted that he change the place at which he was to meet the victim to a more remote area. Defendant then drove Bachicha to the rearranged meeting place. Defendant instructed Bachicha to move from the front passenger seat into the right rear passenger seat. Defendant then placed his handgun between his body and the driver's side door of the vehicle.

When the victim arrived, he got into the vehicle, greeted Bachicha, and introduced himself to defendant. After the victim handed defendant the money, the three men went for a short ride. Defendant parked the car in an alley, where the three men listened to music and drank tequila.

According to a statement defendant reportedly made later to another person, at some point the victim started acting "paranoid and nervous." Bachicha related that defendant pulled out his gun, said to the victim, "Check this out," and, pointing the gun at the victim, said, "Now what, bitch." As the victim reached for the door, defendant shot him in the side of the head, just below the left ear. The victim died from this wound.

Bachicha testified that he and defendant gathered items from the car and ran from the scene. Defendant parted from Bachicha to enter the house of a mutual acquaintance through a window. Minutes later, the police arrested Bachicha.

Bachicha's mother testified that Bachicha had telephoned her right after the shooting and before he was arrested. He was, she said, crying hysterically as he related that defendant had shot and killed the victim.

A search of the crime scene and the area between it and the place where Bachicha was arrested uncovered Bachicha's gun and ammunition but failed to uncover either the fake marijuana or the victim's money.

Several days after Bachicha's arrest, the police recovered the murder weapon from the house of the acquaintance. And at trial, defendant's girlfriend related that she had picked defendant up at the acquaintance's house the night of the shooting.

Defendant did not testify at trial. His theory of defense was that he was not with Bachicha at the time of the shooting. The jury, however, found him guilty of aggravated robbery and first degree felony murder. The trial court merged the aggravated robbery conviction into the felony murder conviction and sentenced defendant to a term of life imprisonment without the possibility of parole.

### I. Sufficiency of Evidence

■ Defendant contends that his felony murder conviction is not supported by sufficient evidence that he committed the alleged underlying felony, aggravated robbery. We disagree.

■ When examining the sufficiency of the evidence, we determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt.

*People v. Sherwood*, 5 P.3d 956, 959 (Colo. App.2000).

 In undertaking this analysis, we recognize that (1) we do not assess the credibility of witnesses or resolve inconsistencies or contradictions in testimony, *People v. Gonzales*, 666 P.2d 123, 128 (Colo.1983); (2) the prosecution must be given the benefit of every reasonable inference which can be drawn from the evidence, *People v. San Emerterio*, 839 P.2d 1161, 1164 (Colo.1992); and (3) where reasonable minds could differ, the evidence is sufficient to sustain a conviction. *See People v. Carlson*, 72 P.3d 411, 416 (Colo.App.2003).

Here, defendant asserts that when the facts are considered, even in the light most favorable to the prosecution, the conclusion that must be drawn is that only a theft, and not a robbery, occurred. Defendant argues that the victim voluntarily handed over his money to defendant, without the "use of force, threats, or intimidation" required for the commission of a robbery under § 18–4–301, C.R.S.2005. We are not persuaded.

In *People v. Bartowsheski*, 661 P.2d 235, 244 (Colo.1983), the supreme court held that "[t]he gravamen of robbery is the application of physical force or intimidation against the victim at any time during the course of a transaction culminating in the taking of property from the victim's person or presence." Property is taken from the "presence of another," the court held, when the property "is so within the victim's reach, inspection or observation that he or she would be able to retain control over the property but for the force, threats, or intimidation directed by the perpetrator against the victim." *People v. Bartowsheski, supra*, 661 P.2d at 244. The court rejected the idea that the victim had to be aware of the taking for a robbery to occur. *People v. Bartowsheski, supra.*

In *People v. Fox*, 928 P.2d 820, 821 (Colo. App.1996), a division of this court held that the employment of force after the taking of property was completed was sufficient to support a conviction for robbery under the "course of the transaction" doctrine. In that case, the defendant's wife stole a purse from another woman's shopping cart. The other woman's husband followed the defendant and his wife to their truck, where the defendant forcefully shoved the husband before entering the truck and driving off with the purse. The division reasoned:

> Defendant does not dispute that the husband and wife were both rightful owners of the property taken. Therefore, at the moment that defendant shoved the husband, he was utilizing force against a person who had a right to exercise control over an item of property that was still within sight and which would have been within his control if not for defendant's use of force.

*People v. Fox, supra*, 928 P.2d at 821; *see also People v. Jones*, 990 P.2d 1098, 1106 (Colo.App.1999)("There is no requirement that the application of force or intimidation must be virtually contemporaneous with the taking.").

Here, when viewed in the light most favorable to the prosecution, the evidence showed: (1) before leaving the house, defendant had told Bachicha that he would kill someone if "something goes down"; (2) the shooting took place in the car in which the false drug transaction occurred; (3) the shooting took place within a short time, less than thirty minutes, of the fake transaction; (4) the money and the fake marijuana were in the car and in reach of the victim; and (5) defendant told another that he had "smoked" the victim because he "was getting paranoid and nervous on [him]."

Under these circumstances, a reasonable jury could conclude that defendant shot the victim to retain control of the victim's money and, thus, committed a robbery upon which a conviction for felony murder could be based. *Cf. People v. Foster*, 971 P.2d 1082, 1085 (Colo.App.1998)(finding sufficient evidence to support robbery conviction where defendant stole bedskirts from a store and, after exiting the store, slammed a car door on a security guard's hand three times in order to continue his unlawful possession of the merchandise).

Consequently, we conclude there was sufficient evidence to support defendant's conviction for felony murder.

## II. Lesser Offense Instruction

Defendant contends that the trial court erred in refusing to instruct the jury on the lesser offense of theft. .We are not persuaded.

A defendant is entitled to an instruction on a lesser offense when there is a rational basis in the evidence upon which to acquit of the greater offense and convict of the lesser one. *People v. Gordon*, 32 P.3d 575, 578 (Colo.App.2001).

Under this standard, a lesser offense instruction is warranted when there exists in the record some evidence affirmatively tending to establish commission of only the lesser offense. *Beaudoin v. People*, 627 P.2d 739, 740 (Colo.1981); *see People v. Hall*, 59 P.3d 298, 300 (Colo.App.2002)(no lesser offense instruction needed "if the element that distinguishes the greater from the lesser offense is uncontested"); *People v. Ramirez*, 18 P.3d 822, 827 (Colo.App.2000)("[T]he mere chance that a jury may reject uncontroverted testimony and convict on the lesser charge does not require the trial court to instruct the jury on the lesser charge.").

Here, defendant requested a jury instruction on theft. The trial court refused, "based on the facts of [the] case concerning the weapons involved and what the plan was and the fact that there was ultimately a death in [the] case."

Defendant's assertion that the evidence could support a finding of only theft ignores that part of the transaction indicating that the victim was shot and killed as a means of retaining possession of the victim's money. Because robbery can be established over the "course of a transaction," and there was no evidence disputing the use of force in the last phase of the transaction to retain control of the victim's property, there was no evidentiary basis for instructing the jury on theft. *See People v. Hall, supra; People v. Ramirez, supra.*

Consequently, we perceive no error in the trial court's refusal to submit the issue of a lesser offense to the jury.

## III. Sequestration Order

Defendant contends that the trial court erred in finding no violation of its sequestration order when the prosecutor briefly talked to a prospective witness about the testimony of a previous witness in the case. We disagree.

On the first day of trial, prior to jury voir dire, the court instructed the parties "to advise all of your witnesses that they are not to be in the courtroom at anytime until they're called to testify and not to discuss their testimony before or after testifying."

During trial, defendant tried to suggest that a more thorough police investigation would have uncovered more evidence tying Bachicha, rather than himself, to the murder. To this end, he elicited from a detective an admission that he had not searched particular trash cans or yards located near the crime scene.

Subsequently, the prosecutor contacted another police officer who had previously testified in the case. The prosecutor advised the officer about the detective's admission and asked the officer whether he knew who had searched the trash cans and yards in question. When the officer responded that he had searched those areas, the prosecution recalled him to the witness stand to testify to his search, as well as to the fact that nothing was found in those areas.

Defendant requested a mistrial or, in the alternative, to strike the officer's recall testimony, based on an alleged violation of the court's sequestration order. The trial court denied defendant's request after finding no inappropriate conduct on the part of the prosecutor or the officer.

The trial court has discretion to determine whether there has been a violation of a sequestration order and, if so, the sanction to be imposed. *People v. P.R.G.*, 729 P.2d 380, 382 (Colo.App.1986). "Before it considers sanctions for a sequestration violation, the trial court must first determine that a violation has actually occurred and prejudice will result from unrestricted admission of the testimony." *People v. Melendez*, 102 P.3d 315, 319 (Colo.2004).

As pertinent here, CRE 615 provides that, upon either its own motion or the request of a party, the trial court "shall order witnesses excluded so they cannot hear the testimony of other witnesses."

■ "The purpose of a sequestration order is to 'prevent a witness from conforming his [or her] testimony to that of other witnesses and to discourage fabrication and collusion.'" *People v. Scarlett,* 985 P.2d 36, 41 (Colo.App.1998)(quoting *People v. Wood,* 743 P.2d 422, 429 (Colo.1987)).

■ To this end, a trial court may not only exclude witnesses from the courtroom during other witnesses' testimony, it may also prohibit witnesses from discussing the case with each other outside the courtroom. *People v. Brinson,* 739 P.2d 897, 899 (Colo. App.1987).

Defendant argues that an attorney's discussion of one witness's testimony with a prospective witness violates CRE 615. We are not persuaded.

■ CRE 615 is identical to Fed.R.Evid. 615. Thus, analysis of the federal rule by federal courts and commentators is germane to a consideration of how our rule ought to apply. *People v. Melendez, supra,* 102 P.3d at 319.

By their terms, both CRE 615 and Fed. R.Evid. 615 apply only to witnesses, not attorneys. *See United States v. Calderin–Rodriguez,* 244 F.3d 977, 985 (8th Cir.2001)(applying Fed.R.Evid. 615; holding prosecutor did not violate sequestration order by conferring with witness about his testimony during overnight break in trial). And, as noted by one set of leading commentators, sequestration orders "usually permit the witnesses to discuss their own *or other witnesses' testimony* with counsel for either side." 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 615.06 (Joseph M. McLaughlin ed., 2d ed.2006).

In *United States v. Rhynes,* 218 F.3d 310, 317–18 (4th Cir.2000)(en banc), Judge King, writing for a plurality of the court, rejected the assertion that Fed.R.Evid. 615 was violated when a defense attorney discussed, outside of the courtroom, a prior witness's testimony with a witness who was about to testify. Recognizing that the underlying purpose of Rule 615 was to discourage and expose fabrication, inaccuracy, and falsification, Judge King noted a critical distinction between witnesses, who are the subject of Rule 615, and lawyers, who are not:

> [L]awyers are not like witnesses, and there are critical differences between them that are dispositive in this case. Unlike witnesses, lawyers are officers of the court, and, as such, they owe the court a duty of candor. Of paramount importance here, that duty both forbids an attorney from knowingly presenting perjured testimony and permits the attorney to refuse to offer evidence he or she reasonably believes is false. Similarly, an attorney may not "counsel or assist a witness to testify falsely." And, if an attorney believes that a non-client witness is lying on the witness stand about a material issue, he is obliged to "promptly reveal the fraud to the court." The Supreme Court has emphasized the importance of attorneys' duty of candor: "Any violation of these strictures would constitute a most serious breach of the attorney's duty to the court, to be treated accordingly." Consequently, lawyers' ethical obligations to the court distinguish them from trial witnesses.

*United States v. Rhynes, supra,* 218 F.3d at 318 (citations omitted; quoting Model Rules of Professional Conduct 3.3 cmt. 4 & 3.4(b) and *Geders v. United States,* 425 U.S. 80, 90 n. 3, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976)); *see* Colo. RPC 3.3, 3.4(b).

We are persuaded by this reasoning, and, applying it here, we agree with the trial court that the prosecutor did not violate the sequestration order.

## IV. Witness's Fear of Defendant

■ We reject defendant's contention that the trial court erred in allowing the prosecution to elicit evidence that a witness was afraid of defendant.

The acquaintance, who owned the house where the murder weapon was found, testified as a prosecution witness at trial. On direct examination, the acquaintance denied having told the police that (1) he had seen

**630**

defendant in possession of the murder weapon; (2) the weapon belonged to defendant; and (3) he had found defendant's weapon in his basement a few days after the homicide.

At this point, the prosecutor asked the acquaintance, who was incarcerated at the time, whether he had told the police he was afraid of defendant. The acquaintance responded, "No, I didn't." Subsequently, the detective who had interviewed the acquaintance testified to the statements previously made by the acquaintance. According to the detective, in one statement, the acquaintance told him that he feared for his life if defendant found out he had talked to the police.

The trial court overruled defendant's objections to evidence about the acquaintance's fear, finding that it was admissible because it tended to show a motive or bias on the part of the acquaintance for denying that he had previously made statements that incriminated defendant.

Evidence is relevant if it tends to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. CRE 401.

■ Relevant evidence is excludable if it is "unfairly" prejudicial, that is, if it has an "undue tendency to suggest a decision on an improper basis, commonly but not necessarily an emotional one, such as sympathy, hatred, contempt, retribution, or horror." *People v. James*, 117 P.3d 91, 93–94 (Colo.App.2004)(quoting *People v. Dist. Court*, 785 P.2d 141, 147 (Colo.1990)). For the evidence to be excludable, however, the danger of unfair prejudice must substantially outweigh the legitimate probative value of the evidence. CRE 403.

■ A trial court is given broad discretion to determine the relevance and relative probative value and unfair prejudice potential of evidence, *People v. James, supra*, 117 P.3d at 94, and we will overturn a trial court's decision to admit evidence only if the decision was arbitrary, unreasonable, or unfair. *People v. Webster*, 987 P.2d 836, 840 (Colo.App. 1998).

■ Within broad limits, any evidence tending to show bias or prejudice, or to shed light on the inclinations of witnesses, may be permitted. *People v. Taylor*, 190 Colo. 210, 212, 545 P.2d 703, 705 (1976); *Trinity Universal Ins. Co. v. Streza*, 8 P.3d 613, 618 (Colo.App.2000)("Bias is a state of mind and only those demands which can influence the mind at the moment of testifying are relevant to a demonstration of bias.").

■ Thus, evidence of a witness's fear of retaliation is admissible to explain his or her change in statement or reluctance to testify. *See People v. James, supra* (upholding admission of gang retaliation-related evidence that was relevant to explain the uncooperative attitudes, "losses" of memory, reluctance to testify, and changed statements of specific witnesses); *see also People v. Burgener*, 29 Cal.4th 833, 129 Cal.Rptr.2d 747, 779, 62 P.3d 1 (2003)("Evidence that a witness is afraid to testify or fears retaliation for testifying is relevant to the credibility of that witness and is therefore admissible.").

In light of these authorities, we perceive no abuse of discretion in the trial court's admitting evidence of the acquaintance's fear of defendant to provide the jury with a possible explanation for the acquaintance's change in statements and reluctance to testify against defendant.

### V. Photograph

■ Finally, we are not persuaded that the trial court erred in choosing to admit a color, rather than black and white, photograph showing the trajectory of the bullet through the victim's head.

■ "Photographs of a homicide victim are admissible at trial when they depict the appearance of the victim, the location and nature of the wounds, or other facts that would be competent for a witness to describe in words." *People v. Raglin*, 21 P.3d 419, 427 (Colo.App.2000). Photographs of this type are not inadmissible "merely because they present vividly to the jurors the details of a shocking crime." *Martinez v. People*, 124 Colo. 170, 177, 235 P.2d 810, 814 (1951); *see also People v. Sepeda*, 196 Colo. 13, 22, 581 P.2d 723, 729 (1978)(graphic photographs

are admissible unless their inflammatory effect "far outweighs" their probative value).

The admissibility of photographs of the victim in a homicide prosecution is within the sound discretion of the court, and the trial court's ruling on whether relevant photographs are unnecessarily gruesome, inflammatory, or otherwise unfairly prejudicial to the defendant will not be reversed unless an abuse of discretion is shown. CRE 403; *People v. Guffie*, 749 P.2d 976, 983 (Colo.App. 1987). We will reverse for an abuse of discretion only where the court's ruling is shown to be manifestly arbitrary, unreasonable, or unfair. *People v. Coney*, 98 P.3d 930, 933–34 (Colo.App.2004).

Here, defendant essentially concedes the significant probative value of a morgue photograph showing the victim's death wound and the path of the bullet that caused that wound. However, defendant argues that the color version of the photograph, showing considerable blood on and about the victim's head, was too gory to be admitted, and a black and white version should have been admitted in its stead.

Upon review, we would not describe the color photograph at issue here as particularly shocking or inflammatory, in the context of a murder case. *See People v. Dunlap*, 975 P.2d 723, 746–47 (Colo.1999)(photographs admitted of victims' fatal wounds, including one of a victim's head lying in a pool of blood); *People v. Moya*, 899 P.2d 212, 217 (Colo.App.1994)(autopsy photos admitted). Consequently, we cannot say that the trial court acted manifestly unreasonably, arbitrarily, or unfairly in deciding to admit the color version into evidence. *See State v. M.M.*, 802 So.2d 43, 74 (La.Ct.App.2001)(rejecting argument that court should have admitted black and white, instead of color photographs, of allegedly gruesome scene).

The judgment is affirmed.

MÁRQUEZ and HUME **, JJ., concur.

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and