The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Naif AL–YOUSIF, Defendant–Appellant.

No. 04CA0320.

Colorado Court of Appeals, Div. II.

Sept. 7, 2006.

As Modified on Denial of Rehearing Dec. 28, 2006.

---

John W. Suthers, Attorney General, Katharine J. Gillespie, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Isaacson, Rosenbaum, Woods, & Levy, P.C., Gary Lozow, Blain D. Myhre, Denver, Colorado, for Defendant–Appellant.

Opinion Modified, and As Modified, Petition for Rehearing *DENIED*.

Opinion by Judge ROTHENBERG.

Defendant, Naif Al–Yousif, appeals the judgment of conviction entered upon jury verdicts finding him guilty of first degree-felony murder, § 18–3–102(1)(b), C.R.S.2005; robbery, § 18–4–301, C.R.S.2005; accessory to a crime, § 18–8–105, C.R.S.2005; concealing a death, § 18–8–109, C.R.S.2005; and theft by receiving, § 18–4–410(1), (7), C.R.S. 2005. We vacate defendant's convictions for theft by receiving and for robbery, affirm the

judgment in all other respects, and remand for correction of the mittimus.

On January 10, 2001, defendant's cousin, Mishal Al–Swaidy (Mishal), and brother, Rashid Al–Yousif (Rashid), picked up the victim from the airport. Rashid dropped Mishal off at the home Mishal shared with defendant and Tariq Al–Dossary (Tariq). Rashid then dropped the victim off at his apartment with plans to see him for dinner.

The victim did not appear for dinner, and a few days later, the victim's family called Rashid from Saudi Arabia looking for the victim. Rashid and a friend went to the victim's apartment. The apartment had been vandalized, and the victim's new car was missing. A missing persons report was filed on January 18, 2001.

Police and private investigators hired by the victim's family uncovered the fact that the car had been sold back to the dealership and that checks had been cashed from the victim's checking account. When Rashid was shown the surveillance tape from the bank, he identified defendant and Tariq as the persons cashing the checks.

Defendant was arrested on January 31, 2001 when he returned to Colorado. Defendant told the police that on January 10, he picked up the victim at his apartment and brought him to the home occupied by Mishal, Tariq, and defendant. Defendant reportedly left the house and went to the grocery store, and when he returned thirty minutes later, he found the victim tied to a chair. Tariq demanded that the victim give him money and the codes for his bank accounts. Tariq then put a rope around the victim's neck and strangled him to death while defendant and Mishal watched. Tariq and Mishal then took the victim's body to a bathroom and took his wallet. Tariq gave defendant the victim's ID card.

Tariq then went to the victim's apartment and stole various items from it. When Tariq returned, he, Mishal, and defendant put the victim's body into a garbage bag and dumped it into a garbage container. Defendant drove a rental car while they disposed of the body.

Defendant and Tariq took the victim's car to the dealership, sold it using the victim's identification, and then went to the bank and cashed the dealership's check plus $1,000 of the victim's cashiers' checks. They also took $19,900 from the victim's checking account. Mishal and Tariq reportedly fled to Saudi Arabia. Defendant fled to California, but Rashid convinced him to return to Colorado, where he was arrested, charged, and convicted of the above-mentioned offenses.

## I.

■ Defendant first contends the trial court erred in permitting the jury to have unfettered access to the transcript of his videotaped interview and the transcript of Rashid's videotaped interview. We disagree.

■ Courts have recognized the need to use transcripts of tape-recorded conversations to assist the jury where portions of a tape are inaudible. *People v. Haider*, 829 P.2d 455 (Colo.App.1991); *People v. Coca*, 40 Colo.App. 440, 580 P.2d 1258 (1978). And, during its deliberations, the jury may have unsupervised access to the transcript of a confession. *People v. Ferrero*, 874 P.2d 468 (Colo.App.1993); *People v. Miller*, 829 P.2d 443 (Colo.App.1991).

C.R.C.P. 47(m) provides that "[u]pon retiring, the jurors shall take the jury instructions, their juror notebooks and notes they personally made, if any, and to the extent feasible, those exhibits that have been admitted as evidence."

In *People v. McKinney*, 80 P.3d 823 (Colo. App.2003), *rev'd on other grounds*, 99 P.3d 1038 (Colo.2004), a division of this court clarified that C.R.C.P. 47(m) permits unsupervised access to testimonial evidence. The division held that all exhibits admitted as evidence may be taken into the jury room, unless it is not feasible to do so, because there is no longer a basis for prohibiting juror access during deliberations to videotapes, audiotapes, or written documents. *People v. McKinney, supra.*

### A. Videotaped Interviews and Transcripts

Over defendant's objection, the trial court admitted a videotaped interview of defendant and the transcript of the interview, after the

interviewing detective testified that the transcript was a fair and accurate representation of the interview. After Rashid testified for the prosecution, the People also offered into evidence his videotaped interview and the transcript as prior inconsistent statements.

During its deliberations, the jury reported that they were having difficulty understanding the two videotapes and requested transcripts of both defendant's and Rashid's videotaped statements. The jury also asked for depositions of two defense witnesses.

The trial court ruled, over defendant's objection, that the jurors could have copies of the transcripts of. defendant's and Rachid's videotaped statements, and added that they would be collected after the jury was finished with the videotape. The court denied the jury's request for the depositions of the two defense witnesses. However, unbeknownst to the court or counsel, the transcript of defendant's statement was initially sent into the jury room with all the other exhibits and remained there during the jury's entire deliberations.

■ Because the transcripts were properly admitted into evidence, *see People v. Haider, supra,* we conclude the trial court did not err in allowing the jury unfettered access to them. *See* C.R.C.P. 47(m); *People v. Pahlavan,* 83 P.3d 1138, 1141 (Colo.App. 2003); *People v. McKinney, supra; People v. Miller, supra.* We further conclude the trial court did not err by permitting the jury to view the videos in the jury room without defendant present. *See People v. Isom,* 140 P.3d 100 (Colo.App.2005)(trial court was not required, as a matter of due process, to secure the defendant's personal presence before permitting the jury to view videotaped statement).

In his petition for rehearing, defendant contends the trial court erred in denying the jury's request for the depositions of two defense witnesses. However, this issue was not raised in his opening or reply brief, and therefore, we will not consider it. *See People v. Casey,* 185 Colo. 58, 521 P.2d 1250 (1974).

## II.

■ Defendant next contends the trial court abused its discretion by admitting evidence that defendant showed a false identification card. to an officer in Arizona. Defendant maintains that this evidence was irrelevant and that any probative value of the evidence was outweighed by its prejudicial effect. We disagree.

■ A trial court has broad discretion to determine the relevance and relative probative value and unfair prejudice potential of evidence, *People v. James,* 117 P.3d 91 (Colo. App.2004), and its decision to admit evidence will not be overturned on appeal absent an abuse of such discretion. *People v. Villalobos,* 159 P.3d 624 (Colo.App. 2006). A trial court abuses its discretion only if its decision is arbitrary, unreasonable, or unfair. *People v. Webster,* 987 P.2d 836 (Colo.App.1998).

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. CRE 401. Under CRE 403, relevant evidence is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice. Unfair prejudice, within the meaning of CRE 403, is an "undue tendency on the part of admissible evidence to suggest a decision made on an improper basis." *People v. Rath,* 44 P.3d 1033, 1043 (Colo.2002) (quoting *People v. Gibbens,* 905 P.2d 604, 608 (Colo. 1995)).

■ The balance required by CRE 403 favors admission, and a reviewing court must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice reasonably to be expected. *People v. Fry,* 74 P.3d 360, 370 (Colo.App.2002), *aff'd,* 92 P.3d 970 (Colo. 2004).

Here, while defendant was fleeing Colorado, he was stopped by law enforcement in Arizona for a traffic violation, and before trial, he moved to suppress the statements he made to the Arizona and New Mexico law enforcement officers. At the hearing, however, the People represented that they were not planning to use any statements defendant

made to New Mexico or Arizona law enforcement.

During trial, the People called an Arizona highway patrolman as a witness. Defendant objected, arguing that the People's pretrial concession precluded the patrolman from testifying about defendant's statements and "whatever else came out of that process concerning contacts between [defendant] and a state patrolman in Arizona." The trial court agreed that the People were precluded from introducing defendant's statements to the Arizona or New Mexico authorities, but observed that defendant's motion had not addressed any other evidence, such as the false ID card.

The court conducted a hearing and ruled that defendant consented to a search after he was stopped for the traffic offense, and that evidence of his false ID card was relevant to the issues of his flight, consciousness of guilt, fluency in English, and experience with law enforcement. We discern no abuse of discretion by the court in so concluding.

### III.

■ Defendant next contends the trial court abused its discretion by permitting the prosecution to amend the robbery count before trial. We disagree.

■ Crim. P. 7(e) permits the trial court in its discretion to allow the People to amend an information as to form or substance at any time prior to trial. *People v. Wright*, 678 P.2d 1072 (Colo.App.1984). Crim. P. 7(e) is to be construed liberally, *People v. Bowen*, 658 P.2d 269 (Colo.1983), and the trial court's decision will not be overturned absent an abuse of discretion. *People v. Wright, supra.*

In this case, defendant was originally charged with a robbery that took place "between and including the dates of January 10, 2001 and January 11, 2001," and the information stated that the things of value were taken from "the persons and presence" of the victim by the use of "threats, force and intimidation." The "things of value" listed in the original count were "car, checks and money." However, the day before trial, the People moved to amend the robbery count to include "wallet, ID card, credit card, keys" to the list

of items taken from the person or presence of the victim on or between January 10, 2001 and January 11, 2001.

The trial court granted the motion to amend, finding that (1) defendant had full notice of the evidence to be used against him, (2) he had received full discovery, (3) the robbery and felony murder counts were charged at the start of the case, and (4) the rules provided that the People could amend the charges up until the point of trial.

Defendant was not charged with new or additional crimes as a result of the amendment. The amendment simply added items to the list of items taken from the victim on or between January 10, 2001 and January 11, 2001. Nor did defendant request a continuance of the trial.

Accordingly, we conclude the trial court did not abuse its discretion by permitting the prosecution to amend the robbery count prior to trial. *See* Crim. P. 7(e); *People v. Wright, supra.*

### IV.

Defendant next contends the trial court erred in refusing to give the jury his tendered duress instruction as a defense to felony murder. Again, we disagree.

Felony murder is a class one felony. Section 18–3–102(3), C.R.S.2005. A defendant commits first degree murder-felony murder if

[a]cting either alone or with one or more persons, he or she commits or attempts to commit ... robbery ... and, in the course of or in furtherance of the crime that he or she is committing or attempting to commit, or of immediate flight therefrom, the death of a person, other than one of the participants, is caused by anyone.

Section 18–3–102(1)(b).

Section 18–1–708, C.R.S.2005, provides that a person may not be convicted of an offense, *other than a class one felony,* for conduct committed under duress. Thus, the statute on its face precludes duress from being raised as a defense to felony murder.

Defendant maintains § 18–1–708 is unconstitutional, arguing that he could have been convicted of felony murder, but acquitted of the predicate felony. But his argument is premised on a hypothetical situation where a duress defense is not given on a felony murder charge, but is given on the underlying felony and the defendant is convicted of murder without being convicted of the underlying felony.

Here, however, defendant was convicted of the predicate robbery offense notwithstanding the fact that the court instructed the jury that duress was a defense to robbery. Accordingly, we reject his argument.

## V.

■ Defendant next contends the trial court erred in failing to instruct the jury that choice of evils was a defense to the robbery count. We disagree.

Choice of evils is a statutory defense and is only applicable when the alleged crimes were necessary as an emergency measure to avoid an imminent public or private injury that was about to occur by reason of a situation occasioned or developed through no conduct of the actor and which is of sufficient gravity to outweigh the criminal conduct. Section 18–1–702(1), C.R.S.2005.

■ Before the defense may be invoked, the defendant must show that his or her conduct was necessitated by a specific and imminent threat of injury to his or her person under circumstances that left the defendant no reasonable and viable alternative other than to violate the law of which the defendant stands charged. *People v. Strock,* 623 P.2d 42 (Colo.1981); *see* § 18–1–702(2), C.R.S.2005 (requiring that "[w] hen evidence relating to the defense of justification under this section is offered by the defendant, before it is submitted for the consideration of the jury, the court shall first rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a justification").

■ A reviewing court must determine as a matter of law whether the defendant's offer of proof, considered in the light most favorable to the defendant, was sufficient to support the statutory defense. *People v. Brandyberry,* 812 P.2d 674 (Colo.App.1990).

Here, the trial court addressed the choice of evils defense in a pretrial hearing and offered defendant an opportunity to make an offer of proof. He failed to do so. Also, before opening statements, the People reminded the court that § 18–1–702(2) required it to make a pretrial determination whether the facts being presented in support of the choice of evils defense were sufficient.

Defendant did not seek such a determination, but waited until the close of the evidence to ask for a choice of evils instruction. The trial court denied the instruction based on his failure to comply with the procedural requirements of § 18–1–702(2).

Contrary to the trial court's ruling, the procedural requirements of § 18–1–702(2) do not require a pretrial determination by the court. The statute simply provides that *before evidence of the defense is submitted to the jury,* "the court shall first rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a justification." Section 18–1–702(2).

■ As a division of this court stated in *People v. Shepherd,* 43 P.3d 693, 696 (Colo. App.2001):

A defendant wishing to invoke this defense must first make a proffer or presentation of evidence supporting the defense to the court outside the presence of the jury; and the court must determine whether, as a matter of law, the claimed facts and circumstances would, if established, constitute sufficient justification for the defendant's alleged conduct.

*See People v. Brandyberry,* 812 P.2d 674, 678 (Colo.App.1990) ("Under the plain language of the statute, evidence in support of the defense must first be proffered or presented to the trial court."); *People v. Weiser,* 789 P.2d 454, 456 (Colo.App.1989) (offer of proof made at motion in limine hearing).

As noted earlier, the trial court here offered defendant two separate opportunities to make an offer of proof to support his request for a choice of evils instruction before the evidence was admitted, and defen-

dant declined to do so. Although we agree with defendant that he was not required to make an offer of proof before trial, he *was* required to do so before admission of the evidence.

Nor are we persuaded by defendant's argument that the prosecution waived this issue by failing to object to defendant's evidence at trial. The prosecution brought the statutory requirement of an offer of proof to the attention of defendant and the court twice. In our view, no more was required to preserve the issue.

Accordingly, because defendant was given a reasonable opportunity to comply with the statute and failed to do so, we conclude the trial court did not err in denying request for a choice of evils instruction. *See Andrews v. People,* 800 P.2d 607 (Colo.1990); *People v. Strock, supra; People v. Brandyberry, supra.*

## VI.

■ However, we agree with defendant that the trial court erred in instructing the jury on a class three felony theft by receiving charge, and we vacate his conviction on that count.

■ A lesser nonincluded offense is an offense less serious than the charged offense, arising from the same facts but containing at least one element different from those in the original charge. *People v. Skinner,* 825 P.2d 1045 (Colo.App.1991).

Robbery is a class four felony. Section 18–4–301(2), C.R.S.2005. Pursuant to § 18–4–410, C.R.S.2005, theft by receiving is a class four felony where the thing of value is $500 or more but less than $15,000. It is a class three felony where the thing of value is greater than $15,000.

At the close of the evidence in this case, defendant requested that the trial court give the jury an instruction on the class four felony offense of theft by receiving, arguing that theft by receiving is a lesser nonincluded offense of the robbery count. The People objected to the instruction, contending that the correct theft by receiving charge in this case would be the class *three* felony, because the evidence showed that defendant with-

drew nearly $20,000 from the victim's checking account.

The court granted the People's request and instructed the jury on the class three theft by receiving charge, as well as the class four theft by receiving charge. The court reasoned that defendant was on notice of the underlying facts supporting the class three felony. However, defendant was originally charged with a class *four* felony, but as a result of the People's tendered lesser nonincluded offense, he ultimately was convicted of a higher offense, namely the class *three* felony of theft by receiving.

We are unaware of any authority that would permit such an outcome, and we conclude the People's reliance on *People v. Garcia,* 17 P.3d 820 (Colo.App.2000), is misplaced because in *Garcia,* unlike here, the original charge and the lesser nonincluded offense were the same class felonies.

Accordingly, we vacate defendant's conviction for theft by receiving and remand to the trial court for correction of the mittimus.

## VII.

Defendant next contends there was prosecutorial misconduct during closing argument that impaired his right to due process and a fair and impartial jury. We perceive no basis for reversal.

■ A defendant has a constitutional right to trial by a fair and impartial jury. U.S. Const. amend. VI; Colo. Const. art. II, §§ 16, 23; *see also Harris v. People,* 888 P.2d 259 (Colo.1995). This constitutional right requires that an impartial jury determine guilt or innocence based solely on properly admitted evidence at trial. *Domingo–Gomez v. People,* 125 P.3d 1043 (Colo.2005).

■■ During closing argument, a prosecutor has wide latitude and may refer to the strength and significance of the evidence, conflicting evidence, and reasonable inferences that may be drawn from the evidence. *Domingo–Gomez v. People, supra.* However, a prosecutor must stay within the limits of appropriate prosecutorial advocacy during

closing argument. *Domingo–Gomez v. People, supra; Harris v. People, supra.*

In reviewing defendant's argument, we may also consider his lack of a contemporaneous objection as a factor demonstrating "the defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging." *Domingo–Gomez v. People, supra,* 125 P.3d at 1054 (quoting *People v. Rodriguez,* 794 P.2d 965, 972 (Colo.1990)). Thus, when a defendant does not make a contemporaneous objection during closing argument, we review only for plain error. *Harris v. People, supra; Wilson v. People,* 743 P.2d 415 (Colo.1987).

Prosecutorial misconduct during closing arguments rarely constitutes plain error that requires reversal. *People v. Constant,* 645 P.2d 843 (Colo.1982). To warrant reversal, the misconduct must be obvious and substantial and "so undermine[ ] the fundamental fairness of the trial itself ... as to cast serious doubt on the reliability of the judgment of conviction." *People v. Miller,* 113 P.3d 743, 750 (Colo.2005) (quoting *People v. Sepulveda,* 65 P.3d 1002, 1006 (Colo.2003)); *see People v. Constant, supra; People v. Petschow,* 119 P.3d 495 (Colo.App.2004). Prosecutorial misconduct amounts to plain error when it is flagrant or glaringly or egregiously improper. *Domingo–Gomez v. People, supra.*

When determining whether the prosecutor's statements were proper and whether reversal is warranted, we consider, among other things, the language used, the context of the statements, whether a statement improperly expressed the prosecutor's personal opinion, whether the statement is an acceptable comment on the credibility of witnesses, the strength of the evidence, whether the evidence is conflicting or inconclusive, whether the prosecutor improperly appealed to the jurors' sentiments, whether the misconduct was repeated, and any other relevant factors. *Domingo–Gomez v. People, supra; Harris v. People, supra; Wilson v. People, supra; People v. Adams,* 708 P.2d 813 (Colo. App.1985).

Here, the trial court had sanctioned the prosecution for a discovery violation by permitting defendant to introduce wrongfully withheld evidence and to receive an instruction on the prosecution's failure to produce it. The court instructed the jury:

[T]he prosecution in all criminal cases has a legal obligation to provide information to the defendant and his attorneys in a timely and appropriate fashion. In this case, the prosecution and the police had in their possession, interviews of two witnesses ... who may have been able to provide relevant information to help the defense in this case.... The district attorney and the police failed to provide this information to the defendant and his lawyers for in excess of 14 months.

During closing argument, the prosecutor asked the jurors to hold *him* accountable for a discovery violation, rather than to hold the police and other law enforcement officials accountable. This statement was improper because it effectively diluted the trial court's order by asking the jury to disregard the fact that the police failed to provide the information to defendant. This was an inexact statement and such a distinction should not have been made by the prosecutor. However, we perceive no plain error because the statement was isolated, and we assume it was not made in bad faith.

We also agree with defendant that the prosecutor erred in stating, during rebuttal, that defendant "lied" about using a fake driver's license. *See Liggett v. People,* 135 P.3d 725 (Colo.2006) (disapproving of asking "were they lying" types of questions). Nevertheless, we conclude the prosecutor's statement did not undermine the fundamental fairness of the trial or cast serious doubt on the reliability of the judgment of conviction.

Defendant also contends the prosecutor's statements in closing suggested that the jury would not be fulfilling its oath if it were to acquit defendant of the charges. The prosecutor stated: "We have proven this case to you beyond a reasonable doubt. And we ask that you fulfill your oath and find him guilty of these charges."

We perceive no error as to this statement, plain or otherwise. The jury takes an oath

that requires it to find a defendant guilty if the People prove the defendant's guilt beyond a reasonable doubt.

Accordingly, we conclude the prosecutor's statements during closing do not warrant reversal.

## VIII.

Defendant next contends the trial court erred in concluding his statement to the police was voluntary and not obtained in violation of his *Miranda* rights. We disagree.

■■■ Whether a statement is voluntary is a legal question and is reviewed de novo. *People v. Gennings,* 808 P.2d 839, 844 (Colo. 1991); *People v. Lopez,* 946 P.2d 478 (Colo. App.1997).

■■■ When the voluntariness of a defendant's statement is challenged, the prosecution must establish by a preponderance of the evidence that, under the totality of the circumstances, the statement was made voluntarily. *People v. Dracon,* 884 P.2d 712 (Colo.1994); *People v. Hutton,* 831 P.2d 486 (Colo.1992). A statement is involuntary if coercive police activity played a significant role in inducing the statement. *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986); *People v. Hutton, supra.*

■■■ In determining voluntariness, a court should consider the totality of the circumstances. *People v. Breidenbach,* 875 P.2d 879 (Colo.1994). Factors to be considered include

whether the defendant was in custody or was free to leave and was aware of his situation; whether *Miranda* warnings were given prior to any interrogation and whether the defendant understood and waived his *Miranda* rights; whether the defendant had the opportunity to confer with counsel or anyone else prior to the interrogation; whether the challenged statement was made during the course of an interrogation or instead was volunteered; whether any overt or implied threat or promise was directed to the defendant; the method and style employed by the interrogator in questioning the de-

fendant and the length and place of the interrogation; and the defendant's mental and physical condition immediately prior to and during the interrogation, as well as his educational background, employment status, and prior experience with law enforcement and the criminal justice system.

*People v. Gennings, supra,* 808 P.2d at 844.

In a pretrial hearing conducted in this case, the trial court suppressed defendant's statement to police, finding that it was obtained in violation of the Fifth Amendment, but that it was voluntarily given. Specifically, the trial court found that (1) defendant knew the detectives were investigating a homicide and were talking with him because they believed he knew what happened to the victim; (2) there were no threats or overt promises made to defendant; (3) the tactics used by the detectives were not coercive or improper; and (4) defendant's mental and physical condition was acceptable.

The trial court also determined that "the People have failed to sustain their burden of proving by a preponderance of the evidence that defendant made a knowing and intelligent waiver of his *Miranda* rights." The trial court found the evidence insufficient to support a conclusion that defendant was "fully aware of the nature of the right to remain silent ... and the consequences of abandoning that right," as required under *People v. Kaiser,* 32 P.3d 480 (Colo.2001).

Thereafter, the People filed an interlocutory appeal, pursuant to C.A.R. 4.1 and Colo. Sess. Laws 1992, ch. 73, § 16–12–102(2) at 400. The Colorado Supreme Court reversed the trial court's suppression order and held that defendant's "waiver of his *Miranda* rights was sufficiently knowing and intelligent to pass constitutional muster." *People v. Al–Yousif,* 49 P.3d 1165, 1172 (Colo.2002); *see People v. Roybal,* 672 P.2d 1003 (Colo. 1983) (a pronouncement of the supreme court on an issue in the case, as well as rulings logically necessary to its holding on the issue, becomes the law of the case and must be followed in subsequent proceedings before the court of appeals on remand).

The supreme court did not address whether defendant's statement was voluntary, and

there was no suggestion in its opinion that the trial court's ruling on that issue was erroneous. In any event, we have examined the record and conclude defendant's statement was voluntary.

### IX.

We further conclude there was no cumulative error that would warrant reversal in this case.

### X.

The People concede, and we agree, that defendant's robbery conviction should merge into his felony murder conviction. *See Boulies v. People,* 770 P.2d 1274 (Colo.1989). Accordingly, we remand for correction of the mittimus.

The judgment is vacated as to defendant's convictions for theft by receiving and for robbery as set forth above. In all other respects, the judgment is affirmed. On remand, the trial court shall correct the mittimus.

Judge ROY and Judge HAWTHORNE concur.