23CA0304 Peo v Jones 07-03-2025

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 23CA0304
El Paso County District Court No. 21CR5498
Honorable William H. Moller, Judge

_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jeremy Dewayne Jones,

Defendant-Appellant.

_____

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE YUN
Tow and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 3, 2025

_____

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney
General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, John Plimpton, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Jeremy Dewayne Jones appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree murder.  He contends that (1) there was insufficient evidence of his mental state presented at trial and (2) the district court reversibly erred by admitting twenty-one graphic photos of the victim's remains.  We affirm the conviction.

## I.    Background

¶ 2    In 2020, Joseph Dewing and the victim — whom he called his "wife," though he admitted they were not "legally married" — were hanging around the front of a 7-Eleven when Jones arrived to buy a drink.  Dewing, armed with a wooden "fighting stick" in each hand, approached Jones as he was getting out of his car and accused him of staring at them.  The two men exchanged heated words, and Dewing eventually struck Jones in the head with one of his sticks.  This prompted Jones to retreat to his car and leave; however, Dewing struck the vehicle several times as it was pulling away.  The victim was not involved in the altercation.

¶ 3    A short time later, Dewing and the victim left the 7-Eleven on their bicycles.  Jones followed them in his car because he "didn't want [Dewing] to get away with hitting [him] with the sticks."  After

1

the couple turned into a narrow parking lot, Jones ran into the side of the victim's bicycle, causing the victim to end up under his car. Though nobody saw the collision, Dewing and several other witnesses testified that they heard a crash followed by the victim's screams.

¶ 4     As Jones came to a stop, Dewing got off his bicycle and yelled something along the lines of "That's my wife!" or "You ran over my wife!" as he ran toward the car, where he began hitting Jones with his fighting sticks through the open window.  Jones got out of the car to fight back and managed to take one of the sticks.  During the fight, Dewing tripped over his bicycle and fell to the ground.  Jones repeatedly hit the downed Dewing with the stick until a bystander approached, at which point Jones stopped and got back in his car. Dewing then banged on the side of the vehicle, saying, "Just let me get my wife. . . .  She is under your car."

¶ 5     Jones drove off, while Dewing chased him yelling that his wife was still under the car.  At a nearby stop sign, Jones stopped, exited the car, and looked under the back of his car.  According to Dewing, Jones said, "Yep, she is still underneath there."  Jones then got back in the car and once again drove off with the victim

still trapped underneath. Her corpse eventually dislodged and was left in the street. The coroner testified that the victim was likely alive for "a significant amount of time" while being dragged under the car.

¶ 6 The People charged Jones with first degree murder for the victim and second degree assault against Dewing. At trial, Jones's telling of events largely aligned with Dewing's, and he did not dispute that the victim was killed by being dragged under his car. Instead, he claimed that he never knew that the victim was trapped underneath — he testified that he did not hit the victim in the parking lot and never heard her scream; that he did not see, feel, or hear anything wrong with his car; and that Dewing never said anything about the victim being trapped under his car.

¶ 7 The jury acquitted Jones of the assault charge, but it found him guilty of second degree murder as a lesser included offense of the first degree murder charge.

## II. Sufficiency of the Evidence

¶ 8 Jones first contends that there was insufficient evidence that he knowingly caused the victim's death. We are not persuaded.

## A.    Standard of Review and Applicable Law

¶ 9    We review the record de novo to determine whether the evidence was sufficient both in quantity and quality to sustain a conviction. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). To determine whether the prosecution presented sufficient evidence to support a conviction, we consider "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.* (quoting *People v. Bennett*, 515 P.2d 466, 469 (Colo. 1973)). In doing so, we give the prosecution the benefit of all reasonable inferences supported by a logical connection between the facts established and the conclusion inferred. *Id.* at 1292.

¶ 10    In making this determination, we recognize that "it is the jury which should decide the difficult questions of witness credibility and the weight to be given to conflicting items of evidence," *People v. Gibson*, 203 P.3d 571, 575 (Colo. App. 2008) (quoting *People v. Brassfield*, 652 P.2d 588, 592 (Colo. 1982)), and we do not sit as a thirteenth juror to reassess witness credibility or to reweigh the

4

evidence presented to the jury, *see Clark*, 232 P.3d at 1293; *People v. Franklin*, 645 P.2d 1, 4 (Colo. 1982) ("The determination of the credibility of witnesses is a matter solely within the province of the jury.").

## B.    Discussion

¶ 11    A person commits second degree murder by, as relevant here, "knowingly caus[ing] the death of a person." § 18-3-103(1)(a), C.R.S. 2024. "A person acts 'knowingly' . . . with respect to a result of his conduct[] when he is aware that his conduct is practically certain to cause the result." § 18-1-501(6), C.R.S. 2024.

¶ 12    Jones asserts there was insufficient evidence that he knowingly caused the victim's death. Specifically, he asserts that "there was no evidence that he was aware" that the victim was under his car when he drove away. But a defendant's mental state can be inferred from his conduct and the circumstances surrounding the commission of a crime. *People v. Grant*, 174 P.3d 798, 812 (Colo. App. 2007); *see People v. Collie*, 995 P.2d 765, 773 (Colo. App. 1999) ("Evidence of a defendant's intent can 'rarely be proven other than by circumstantial or indirect evidence.'" (quoting *People v. Valenzuela*, 825 P.2d 1015, 1016 (Colo. App. 1991))).

5

¶ 13   The evidence presented to the jury included the following:

- Jones chose to follow Dewing and the victim in his car because he "didn't want [Dewing] to get away with hitting [him] with the sticks."

- Jones accelerated toward the couple as they entered the parking lot. Security camera footage showed the victim clearly illuminated by Jones's headlights as he sped toward her. Although no one witnessed the collision (and it was not captured by the camera), there was expert testimony that Jones's car had paint on the front wheel that was "indistinguishable" from the paint on the victim's bicycle and that the bicycle had damage consistent with being hit by the car.

- Jones admitted that his car window was partially rolled down and his radio was off. Multiple witnesses — including one person who was down the street from the vehicle — testified that they heard a loud crash, and multiple witnesses testified that they heard the victim's loud screams. Most notably, Jones tried to call a friend

before the collision; that friend testified that he received a voicemail in which he could hear a woman screaming.

- Dewing testified that he repeatedly yelled, "[You] just ran over my wife!" as he approached Jones's car window after the crash and that he banged on the car while yelling that his wife was under the car when Jones began to drive away.

- A witness testified that she saw "something in the front of [Jones's] car because the front tires were not making traction[]" and she could hear "that there was something underneath" that was making a "squishing sound." Similarly, Dewing testified that he heard a "scraping sound" like "something dragging . . . across the ground" as Jones drove away.

- Dewing chased Jones while yelling that his wife was under the car as Jones drove away. A security camera captured Jones eventually stopping at a stop sign, getting out, and looking underneath his car. Dewing testified that Jones then said, "Yep, she is still underneath there."

¶ 14     We conclude that this evidence was sufficient for a rational jury to infer beyond a reasonable doubt that Jones knew the victim was under his car as he drove away from the parking lot.

¶ 15     We recognize that Jones testified that he was unaware that the victim was beneath his car.  But evidence is not rendered insufficient just because it is conflicting.  *See People v. Moya*, 899 P.2d 212, 218 (Colo. App. 1994).  And as the fact finder, the jury was free to — and evidently did — find Jones's testimony not credible; we may not substitute the jury's assessment of witness credibility with our own.  *See People v. McIntier*, 134 P.3d 467, 471 (Colo. App. 2005) ("[I]t is the fact finder's function in a criminal case to . . . resolve conflicts, testimonial inconsistencies, and disputes in the evidence."); *Clark*, 232 P.3d at 1293.  Moreover, once "the jury did disbelieve [Jones], it was further entitled to consider whatever it concluded to be perjured testimony as affirmative evidence of guilt." *People v. Clark*, 214 P.3d 531, 538 (Colo. App. 2009) (quoting *Wright v. West*, 505 U.S. 277, 296 (1992) (opinion of Thomas, J., joined by Rehnquist, C.J., and Scalia, J.)), *aff'd on other grounds*, 232 P.3d 1287 (Colo. 2010).

¶ 16 We are not persuaded otherwise by Jones's reliance on the "equipoise principle" articulated in *United States v. Goldesberry*, 128 F.4th 1183 (10th Cir. 2025). This principle requires reversal of a conviction when the evidence is in "equipoise," meaning the evidence "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence.'" *Id.* at 1193 (quoting *United States v. Lovern*, 590 F.3d 1095, 1107 (10th Cir. 2009)).

¶ 17 Jones has not identified, nor are we aware of, any Colorado state court cases that have adopted the "equipoise principle." Indeed, the principle appears to "sit[] in tension with our standard of deference to the jury" by "allow[ing] courts to usurp the jury's function." *Id.* at 1206 (Eid, J., dissenting); *see People v. Carlson*, 72 P.3d 411, 416 (Colo. App. 2003) ("Where reasonable minds could differ, the evidence is sufficient to sustain a conviction."). But more importantly, the evidence here is not in equipoise because, as outlined above, there was ample affirmative evidence from which the jury could infer Jones knew the victim was under his car. *Cf. Goldesberry*, 128 F.4th at 1198 ("Even if the jury discounted evidence favorable to [the defendant], . . . the government would still have no *affirmative* evidence of *mens rea*.").

¶ 18    Viewing all of the evidence in the light most favorable to the prosecution, as we must, a reasonable fact finder could find that Jones knowingly caused the victim's death.

### III.    Admission of Victim Photos

¶ 19    Jones next contends that the district court abused its discretion by admitting twenty-one photos of the victim's remains. He argues that the number of photos was unfairly prejudicial and unnecessary.  We disagree.

### A.    Standard of Review and Applicable Law

¶ 20    The district court has broad discretion in determining the admissibility of evidence based on its relevance, probative value, and prejudicial impact.  *People v. Elmarr*, 2015 CO 53, ¶ 20.  We review these evidentiary rulings for an abuse of discretion. *People v. Quillen*, 2023 COA 22M, ¶ 14.  The district court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if the court misapplies the law.  *Id.*

¶ 21    Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  CRE 401.  But relevant evidence may be excluded if

its probative value is substantially outweighed by the danger of unfair prejudice.  CRE 403.

¶ 22    The balancing test under Rule 403 favors the admission of evidence.  *People v. Cousins*, 181 P.3d 365, 370 (Colo. App. 2007). Thus, when reviewing a district court's exercise of discretion under Rule 403, an appellate court must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected.  *Id.*

¶ 23    Photos of a victim are admissible in evidence so long as they depict relevant facts and are not unnecessarily gruesome.  *People v. Herrera*, 2012 COA 13, ¶ 30.  Such photos may be relevant for various purposes, such as to portray the scene of the crime, the victim's appearance and condition, or any other facts a witness could describe in words.  *Id.* at ¶ 33.  It is within the district court's discretion to decide whether photos are unnecessarily gruesome or inflammatory so as to have an undue tendency to suggest a decision on an improper basis, such as sympathy, hatred, contempt, retribution, or horror.  *People v. Ruibal*, 2015 COA 55, ¶¶ 41, 43; *see also* CRE 403.

## B. Additional Background

¶ 24    Before opening statements, defense counsel objected to the admission of the challenged photos, arguing that they were extremely prejudicial but only marginally relevant because Jones was not contesting the manner of death. The prosecutor countered that the photos were relevant to show the crime scene and the victim's condition and to corroborate the coroner's testimony that the victim was actively bleeding (and therefore still alive) for some of the time she was under the car. And he stated that the reason there were so many photos was to "start . . . from a distance to give . . . context and then move in closer" to show different angles of individual wounds.

¶ 25    The district court recognized the potential for prejudice from "a succession of photos showing the same injury which just tends to inflame the emotions of the jury." But after reviewing the photos, the court found that they depicted "a broad-brush picture of the scene of the event, the injuries to the victim, and then the photos themselves show different areas of the victim's body and do not appear to focus on any one injury over another." As a result, the court overruled defense counsel's objection, and all twenty-one

12

photos of the victim's remains were later admitted during witness testimony.

## C. Discussion

¶ 26    Jones concedes that some of the photos "were undoubtedly admissible." But he contends that "[i]t was not necessary to admit the vast majority of the[] twenty-one photographs" because "[t]he same probative value could have been achieved by admitting a fraction of the . . . photographs — perhaps five or fewer." We conclude that the district court did not abuse its discretion by admitting the photos.

¶ 27    As the prosecution argued, the photos were relevant for portraying the crime scene, establishing the victim's identity and condition, and corroborating the coroner's testimony regarding the timing of the victim's death. *See Herrera*, ¶ 33; *see also People v. Dunlap*, 975 P.2d 723, 747 (Colo. 1999) (photos of homicide victims were relevant to show, among other things, "the crime scene, the victims' identities, [and] the injuries to the victims").

¶ 28    Although it is true, as Jones argues, that nobody disputed how the victim was killed, the challenged photos were still probative. Specifically, the photos were relevant to the coroner's

13

testimony because whether the victim was already dead before Jones drove away from the parking lot was a disputed issue at trial. Additionally, the photos, which showed the extensive nature of the victim's injuries, were relevant to dispute Jones's claim that the death was accidental and that he never knew the victim was under his car. *See Ruibal*, ¶¶ 47-48 (photos of a homicide victim's head showing the severity of the injuries were relevant to refute the defendant's alternative suspect theory and to prove the defendant's mental state by showing he acted with intent to cause serious bodily injury).

¶ 29    There were numerous photos of the victim's injuries because the injuries were spread across her body. *See Herrera*, ¶ 34. Under these circumstances, the sheer number of photos does not make their admission cumulative or unduly prejudicial. *See People v. Hall*, 107 P.3d 1073, 1079 (Colo. App. 2004) ("Evidence is not 'unfairly prejudicial' simply because it damages the defendant's case."); *Lira v. People*, 445 P.2d 62, 64 (Colo. 1968) (evidence is admissible, even if cumulative, if "it sheds light on a material inquiry") (citation omitted).

¶ 30     Moreover, the photos were not rendered inadmissible simply because they vividly presented the details of a shocking crime, *see People v. Villalobos*, 159 P.3d 624, 631 (Colo. App. 2006); because they illustrated details a witness could have described in words, *see People v. Sepeda*, 581 P.2d 723, 730 (1978); or because they related to some matters (such as the manner of death) that were not in dispute, *see Herrera*, ¶ 32.

¶ 31     And, ultimately, it was up to the district court, exercising its discretion, to determine whether the evidence was unnecessarily gruesome or inflammatory and to decide which and how many photos to allow. *See Ruibal*, ¶ 41. Although we might have reached a different conclusion on the admission of all twenty-one photos, we cannot say that the court exceeded its broad discretion. *See Sepeda*, 581 P.2d at 729-30 (district court did not abuse its discretion by admitting photos of the victim's fatal wounds); *Ruibal*, ¶ 50 (district court did not abuse its discretion by admitting multiple color photos of the inside of the victim's head); *Villalobos*, 159 P.3d at 631 (district court did not abuse its discretion by admitting a color photo showing the trajectory of a bullet through the victim's head, even though it showed blood around the victim's

15

head, as the photo was not "particularly shocking or inflammatory . . . in the context of a murder case").

¶ 32    Accordingly, we conclude that the probative value of the challenged photos was not substantially outweighed by the danger of unfair prejudice, and the district court did not err by admitting them.

## IV.    Disposition

¶ 33    The judgment is affirmed.

JUDGE TOW and JUDGE SULLIVAN concur.